**SHEMWELL et al. v. SPECK et al.**

Court of Appeals of Kentucky.

Feb. 26, 1954.

---

W. Pelham McMurry, Paducah, for appellants.

John K. MacDonald, Jr., Paducah, for appellees.

CULLEN, Commissioner.

This is a zoning case.

In 1952, in connection with the adoption of a comprehensive zoning ordinance by the City of Paducah, a certain area in the city, containing some 100 blocks, was classified as an "R-2 One Family Zone," in which only one-family residences and limited types of multiple-family dwellings were permitted. On one edge of this zone, lying between Jackson and Ohio Streets, are three blocks which for convenience we will designate as Blocks 1, 2 and 3. Block 1 lies to the west, and Block 3 to the east, of Block 2. Imme-

diately to the north of these three blocks, across Jackson Street, is an area approximately three blocks square, which is owned by the city school board and which for several years has been planned to be used for a high school building or football stadium. Immediately to the south of the three blocks in question, across Ohio Street (and outside of the R-2 zone), is a public housing project, the northern boundry of which is coextensive with the southern boundary of the three blocks. So the three blocks lie between the school property and the housing project.

Prior to the adoption of the zoning ordinance, the right of way for the proposed Paducah Beltline Highway had been laid out and purchased. This right of way angles from Jackson Street to Ohio Street, cutting off the northeast corner of Block 1, and the southwest corner of Block 3, and bisecting Block 2 from the northwest corner to the southeast corner, leaving Block 2 to consist of two triangular shaped parcels. The highway subsequently was constructed over this right of way.

After the highway was constructed, the trustees of the Masonic Lodge purchased the west end of the northern triangle of Block 2, with the object of erecting a lodge building upon it. The trustees then prevailed upon the board of commissioners to rezone this parcel and place it in an "R-4 Multiple Dwelling Zone," in which apartment buildings, hotels, fraternity or sorority houses, lodging houses or tourist homes, doctor's offices, nursing or rest homes, and club or lodge buildings may be maintained. Some neighbors then brought action alleging that the rezoning ordinance was invalid, and seeking to enjoin the use of the property for any purpose other than those permitted in an R-2 zone. The court denied the relief sought, and the plaintiffs have appealed.

One contention of the appellants seems to be that a zoning ordinance can never be changed unless there has been a change of conditions since the adoption of the ordinance. This is a misconception of the law. The statute governing zoning in

second-class cities, KRS 100.420, authorizes amendments or changes "from time to time" with no requirement of a change of conditions. We think that a reconsideration or re-examination of the conditions in any area of the city may justify a change in the zoning ordinance as it affects that area, even though there has been no change of conditions in the area since the adoption of the original ordinance.

The cases in which the courts have said that there must be a showing of a change of conditions are cases in which one piece of property, in a particular zoning district, has been singled out and reclassified without there being any apparent basis for distinguishing it from the remainder of the district. See Polk v. Axton, 306 Ky. 498, 208 S.W.2d 497, and Byrn v. Beechwood Village, Ky., 253 S.W.2d 395. In other words, it is only in the "spot zoning" cases that the question of a change of conditions is involved.

We have in the case before us a situation where the conditions and circumstances surrounding Blocks 1, 2 and 3 are such as to have warranted a separation of all three blocks from the R-2 zone. Apparent reasons exist for distinguishing these three blocks from the rest of the R-2 zone. The only question is whether the action of the city was arbitrary, capricious and unreasonable in reclassifying only a portion of one of the three blocks.

It must be remembered that the purpose of zoning is not to protect the value of the property of particular individuals, but rather to promote the welfare of the community as a whole. When the circumstances and conditions justify the removal of certain zoning restrictions from a particular area, and the zoning authorities remove the restrictions only from a portion of that area, it would seem that the only cause for complaint by adjoining property owners would be that they had been discriminated against. They could be discriminated against only if they desired the restrictions removed from their property and the zoning authorities refused to do so. We do not have that situation here, because in this case the adjoining property owners do not want the restrictions removed from their property. The case boils down to a complaint by the adjoining property owners that the zoning change has damaged the value of their property. Since the zoning authorities would have been justified in reclassifying their property, as well as the one parcel that was reclassified, we do not see how they can have cause for complaint.

In many respects the facts in this case are similar to those in City of Louisville v. Puritan Apartment Hotel Co., Ky., 264 S.W.2d 888, in which the reclassification of three lots in an apartment zone, to a commercial classification, was upheld. The reasoning relied upon in that case is applicable here.

The judgment is affirmed.