Howard L. FRITTS et al., Appellants,

v.

CITY OF ASHLAND, a Municipal
Corporation, et al., Appellees.

Court of Appeals of Kentucky.

June 16, 1961.

Creech & Cox, Ashland, for appellants.

J. W. McKenzie, A. W. Mann, Arthur T. Bryson, Jr., Bunyon S. Wilson, Jr., Ashland, for appellees.

CULLEN, Commissioner.

The Board of Commissioners of the City of Ashland rezoned from R–2 Residential to I–1 Light Industrial a tract of four acres which was in single ownership. A group of neighboring property owners brought action attacking the rezoning ordinance on the ground that it was arbitrary, capricious and unreasonable. The circuit court entered judgment upholding the ordinance and the plaintiffs have appealed.

Ashland adopted a comprehensive zoning ordinance in 1955, following a study with the assistance of state experts that began in 1951. The city bounds on the Ohio River on the northeast and extends to the south and west. The area along the river was zoned for industrial and commercial uses. Aside from this area only two other districts were zoned for light industry, one in the northwest quarter of the city and the other near the west boundary. The rest of the city was zoned residential, except for appropriately located small commercial districts and for necessary educational, institutional and recreational areas. The tract here in question, which is called the Wilson tract, is located near the geographical center of the city in a neighborhood that is residential in character. The tract is two blocks from a grade school accommodating 350 children and three blocks from the presently being constructed senior high school which will have an

enrollment of some 1200 students. The nearest industrially zoned property is one and one-half miles away.

In 1959, following a study by an employed firm of consultants, the city adopted a master plan. This plan, in accordance with KRS 100.350(1) (which refers to KRS 100.046), 100.352, 100.353 and 100.354, dealt with *public facilities* and made no changes in the zoning districts as related to private uses.

The Wilson tract was rezoned in September 1960. It is clear from the record that the zoning change was made because the owners of a garment factory, which had outgrown its existing location in the city, desired to build a new factory on the Wilson tract, and threatened to leave the city unless this tract was made available. There is no pretense that the zoning change was a step in any coordinated plan for establishment of industrial districts.·

The contention of the appellants is, of course, that this is a case of spot zoning.

There was no evidence of any change in the neighborhood since the enactment of the original zoning ordinance in 1955, nor was there proof that the Wilson tract was by its situation distinguishable in character from the surrounding or adjoining property. Therefore, under the decision in Byrn v. Beechwood Village, Ky., 253 S.W.2d 395, the zoning change on its face was arbitrary, capricious and unreasonable, and the burden was on the city authorities to justify the change.

The city authorities have attempted to justify their action on two grounds. One is that the "general welfare" of the city will be promoted by reason of employment being provided for some 400 citizens in the relocated garment factory. The other is that zoning in Ashland was still in a formative state and therefore the city should be entitled to great latitude in modifying the original plan.

■ The argument with respect to the first ground points up a common fallacy

that seems to exist in the minds of zoning agencies. It is that the particular use that a particular owner says he intends to make of a particular tract of land is a controlling factor. Here the Wilson tract was rezoned because the Wilsons said they intended to convey it to the owners of the garment factory who said they intended to build a new garment factory there. However, the ordinance did not rezone the tract for use by the Ashland Crafts Garment Factory but for any appropriate light industry use. There was no guaranty that either the Wilsons or the garment factory people would not change their minds, resulting in the tract being occupied by some light industry that would not have the appealing features of the proposed garment factory. In fact, one of the appellees' witnesses said: " * * * I understand they zoned it just for this particular type of building. I would say for that building it wouldn't hurt * * * but when you say rezone it for light industry and go out and build a lot of different kinds of buildings I don't go along on that. * * * I would be against just throwing it open for any type of light industry but for this one plant I wouldn't think it would hurt." The point is that in establishing a light industry zone the only proper consideration is whether in the light of a comprehensive, coordinated zoning plan the particular area should be set aside for general light industry uses. See Pierson Trapp Co. v. Peak, Ky., 340 S.W.2d 456.

■ Regardless of the foregoing considerations, the general welfare argument is not sound. The providing of employment opportunities is merely one element of general welfare as that term relates to the zoning field. Sociological factors, protection of property values, traffic and safety considerations, preservation of health, providing adequate light and air, all enter into the question of general welfare. See KRS 100.066, 100.520. If the appellees' argument were carried to its logical conclusion the mere fact that employment would be provided through a particular use of land

would overcome all other factors, and a boiler factory could be put in the middle of a beautiful residential neighborhood.

The appellees argue that it is essential to the welfare of the city that the garment factory be retained, and that there are no suitable light industry sites in the city other than the Wilson tract. Our answer to that is that if the lack of suitable industrial sites is due to the restrictions of the present zoning ordinance a study and survey of the situation should be made, suitable areas for industrial development selected, and changes made in the zoning ordinance in accordance with systematic planning. On the other hand, if lack of suitable sites is due to other factors no real solution to the long range problem is reached by momentarily satisfying one particular industry.

The proposition that zoning in Ashland is in the formative state is based upon a statement in the report of the consultants who prepared the 1959 *master plan*, to the effect that the work on the master plan was of limited scope and therefore should be considered subject to modification when additional studies were made, and that the "Land Use Plan" and the "Major Street Plan" were designated as "preliminary". As hereinbefore mentioned, the master plan relates only to *public facilities,* such as streets, sewers, parks, public utilities, airports, etc., and does not establish private use restrictions or districts. Accordingly, the fact that the master plan may have been in a formative state does not mean that the zoning ordinance establishing private use restrictions and districts was in any way preliminary or conditional. Furthermore, even if the zoning ordinance should be considered in a formative state it would not follow that modifications could be made without regard to any coordinated plan.

The circuit court found as a fact that the zoning change was "in accord with an orderly plan of zoning development." The evidence does not support that finding but

on the contrary shows that the change was made solely to meet a particular exigency.

The circuit court further found that there was no evidence to show that the plaintiffs or other property owners would be injured by the rezoning, and that there was substantial proof that the neighborhood would be improved. However, as pointed out in Byrn v. Beechwood Village, Ky., 253 S.W.2d 395, Shemwell v. Speck, Ky., 265 S.W.2d 468, and Pierson Trapp Co. v. Peak, Ky., 340 S.W.2d 456, the effect of a zoning change on the value of neighboring property is only one factor to be considered, and the purpose of zoning is not to protect the value of the property of particular individuals but rather to promote the welfare of the community as a whole. The entire community is damaged by haphazard zoning because it causes insecurity of property values throughout the city. So the mere fact that the particular complaining parties may not suffer a decrease in the value of their property will not redeem a zoning change that is not related to proper zoning objects.

In our opinion we have here a clear case of spot zoning and the ordinance making the zoning change must be held invalid.

We feel impelled to express briefly our view of the proper theory of zoning as relates to the making of changes in an original comprehensive ordinance. We think the theory is that after the enactment of the original ordinance there should be a continuous or periodic study of the development of property uses, the nature of population trends, and the commercial and industrial growth, both actual and prospective. On the basis of such study changes may be made intelligently, systematically, and according to a coordinated plan designed to promote zoning objectives. An examination of the multitude of zoning cases that have reached this court leads us to the conclusion that the common practice of zoning agencies, after the adoption of an original ordinance, is simply to wait until some property owner finds an opportunity to

acquire a financial advantage by devoting his property to a use other than that for which it is zoned, and then struggle with the question of whether some excuse can be found for complying with his request for a rezoning. The result has been that in most of the rezoning cases reaching the courts there actually has been spot zoning and the courts have upheld or invalidated the change according to how flagrant the violation of true zoning principles has been. It is to be hoped that in the future zoning authorities will give recognition to the fact that an essential feature of zoning is *planning*.

The judgment is reversed, with directions to enter judgment holding the rezoning ordinance invalid.