**Thomas H. HODGE et al., Appellants,**

**v.**

**T. D. LUCKETT et al., Appellees.**

Court of Appeals of Kentucky.

March 9, 1962.

Rehearing Denied June 8, 1962.

J. W. Jones, Louisville, for appellants.

James L. Taylor, Boehl, Stopher, Graves & Deindoerfer, E. R. Johnson, Louisville, for appellees.

PALMORE, Judge.

This is a "spot zoning" controversy in which a group of residents and property owners in the unincorporated community of Lyndon in Jefferson County appeal from a circuit court judgment affirming the re-zoning of an 18½ acre tract, owned by the appellee Foeman, from a residential to light industrial classification.

A comprehensive zoning plan for the un-incorporated areas of Jefferson County has been in effect since 1943. No property within about 4 miles of Lyndon has ever been zoned as industrial. Naturally, therefore, no industrial development has since occurred in the area. There are, however, several nonconforming uses carried over from pre-zoning days. The land in question is within and completely surrounded by an area that is zoned residential. The nearest non-residential zone is the commercial property at the main business corner of Lyndon some 2 or 3 blocks away.

The main trouble with this 18½ acres is that it is low land which receives surface waters from a large area and does not drain well. It is "crawfish" ground on which water frequently stands. There are

no public sanitary sewer facilities in the vicinity, and percolation tests made on the tract in 1957 indicated much of it to be unsuitable for septic tanks. Only the westernmost portion of the property, variously estimated from 20% to 50%, could possibly be developed for residential use under existing circumstances. There was testimony, however, that as a whole it probably could be adapted to certain types of industrial use, though even this would require remedial measures against the drainage problems.

Aside from the drainage situation there are other reasons why this property may be better suited (or, at least, less unsuited) for industrial than residential development. It is bounded on the north by the right-of-way of the L & N Railroad Company, on the east by an unimproved dead-end street or lane called Ormsby Road, on the south by an unimproved street named Violet Avenue, and on the west by the rear of several residential lots of considerable depth which front on Grant Avenue, a street running from Violet Avenue to the railroad. The railroad tracks are situated on a fill 12 to 15 feet high, which detracts from the desirability of adjacent property for residential purposes. (Nevertheless, the property along the railroad from Crescent Hill in Louisville to Anchorage, on the other side of Lyndon, has continued to develop residentially.) A large high-tension electric power line runs across the easternmost portion of the property in question, just west of Ormsby Road, and across the street on the east side of Ormsby Road are a substation of the Louisville Gas & Electric Company and an old building that houses a woodworking concern, a plumbing contractor and a small trucking company. The electric substation is a permissive use under zoning laws. The other activities constitute an "inherited" non-conforming use.

Foeman bought the property in 1957. Almost at once he optioned it to the Kentucky Rural Electric Cooperative Company and applied to the Louisville and Jefferson County Planning and Zoning Commission for a rezoning that would permit the contemplated use of the tract by the prospective purchaser. Between then and now this deal has fallen through, but that was the genesis of the proceeding before us today. Concededly, it was privately initiated for private purposes and did not grow out of any public planning.

Since 1955 some 50 to 60 homes in the $15,000 to $20,000 class have been built along two streets intersecting Violet Avenue from the south in the proximity of the Foeman tract. Owners of these homes are prominent among the objectors to the instant rezoning. They invested in their property on the strength of the prevailing pattern of zoning, and they invoke the protection of the law against a change they contend will be a detriment to them and a benefit to no one but Foeman.

■ The trial court made findings of fact that (1) the Foeman property is "unsuitable for residential use," (2) it is "best suited" for industrial development as provided by the action of the zoning commission, and (3) retention of the residential restriction upon it would be "unwise and unsound." Strictly speaking, these are opinions rather than facts, but they fall within the category of factual determinations that are conclusive on appeal if supported by substantial evidence, which is to say, if they are not clearly erroneous. CR 52.01; Louisville & Jefferson County Planning and Zoning Commission v. Cope, Ky., 1958, 318 S.W.2d 842.

The conclusions of law reached by the court were that the residential classification of the Foeman property constituted an unreasonable and arbitrary restriction on its use, not reasonably related to the public health, safety, morals or general welfare, and that the zoning commission had properly exercised its power in changing the classification.

Much has been written on the subject of "spot zoning," and we shall not attempt any further definition here. See Yokley, Zoning Law and Practice, Vol. 1, pp. 202–224,

§§ 90–95; and annotation, "Spot Zoning," 51 A.L.R.2d 263–315. The question of just what circumstances will suffice as a "reasonable ground or basis for the discrimination," validating a reclassification that would otherwise be stricken down as illegal spot zoning, is not neatly answerable. Mathis v. Hannan, Ky.1957, 306 S.W.2d 278, 280. However, several broad currents of principle can be identified in the ocean of case law on the subject. Probably the most common example is a substantial change of conditions in the vicinity of the affected property. Cf. Louisville & Jefferson County Planning & Zoning Commission v. Cope, Ky.1958, 318 S.W.2d 842. Another, as it was recently expressed in Fritts v. City of Ashland, Ky.1961, 348 S.W.2d 712, 714, is where the particular reclassification is made pursuant to a "coordinated plan designed to promote zoning objectives." See Leutenmayer v. Mathis, Ky. 1959, 333 S.W.2d 774, 776. A third recognized category consists of those cases in which the condition or character of the property itself distinguishes it from the surrounding property and shows a reasonable basis for different classification (or, to put it another way, the property was improperly classified in the first place). Byrn v. Beechwood Village, Ky.1952, 253 S.W.2d 395; Shemwell v. Speck, Ky.1954, 265 S. W.2d 468; Keller v. City of Council Bluffs, Iowa, 1954, 246 Iowa 202, 66 N.W.2d 113, 51 A.L.R.2d 251.

"When an application is made for reclassification of a tract of land from one zone to another, there is a presumption that the zones established by the original zoning ordinance were well planned and arranged and were intended to be more or less permanent, subject to change only when there are genuine changes in conditions. Therefore, before a zoning board rezones a property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood has changed to such an extent that reclassification ought properly to be made." Offutt v. Board of Zoning Appeals of Baltimore County, 1954, 204 Md. 551, 105 A.2d 219.

The reclassification in this case is not part of an orderly and systematic scheme of planning, nor has there been any change of condition in the surrounding territory except that it has become more instead of less residential in character. Under no theory can the zoning change be sustained unless it falls within the third category we have mentioned, in that the condition of the property itself is a reasonable basis for differentiation.

Thus far these three avenues of justification, or grounds for special treatment, have been mentioned as if they were of equal weight. However, a rezoning that rests entirely on some difference existing from the time of the original zoning is inherently weak. The time for the owner to speak was when the unfortunate classification of his property was first proposed or put into effect. Neither he nor his successor in title is in a good position to assert the error after others have invested in neighboring property in reliance on the zoning plan. True, his property ought not to be forever consigned to oblivion, but if he has remained silent when he should have spoken it is no injustice to impose the condition that in order to justify a reclassification he show by clear and convincing proof that there will be no substantial resulting detriment to others.

█ The evidence in this case was directed almost wholly to the unsuitability of this particular property to residential development, and its suitability for industrial purposes. Actually its suitability for residential purposes is a relative proposition. Foeman himself lives on it. It is suitable for pasture and truck gardening, having been so used all along. That a parcel of real estate cannot be cut up into small lots and thereby developed to the uttermost degree as a residential subdivision does not necessarily brand it as unsuitable for a residential classification. Nor, obviously, is the purpose for which the property will

have the greatest sale value a fair test of its best use with due regard for the common good of the community. Cf. Fritts v. City of Ashland, Ky.1961, 348 S.W.2d 712. An industrial concern might be willing to pay a high price for the whole 18½ acres in this case in order to utilize only that portion which is fit for residential construction, leaving the marshy bottom even less used than it is at present. The practical result of rezoning would thus be limited to that portion of the property which in fact is *not* distinguishable in condition or character from the surrounding residential area, and which there is absolutely no basis to rezone. We point out these facets of the situation not to refute the judgments of the zoning commission and the learned trial court, but to underscore what was said in Fritts v. City of Ashland, supra, to the effect that the only real and solid basis for rezoning is planning, and not the exigencies of the moment.

██ Without passing on the other factual findings of the trial court, we conclude that the determination that it would be "unwise and unsound" to retain the existing classification of the 18½ acres is clearly erroneous. Under the rule we have here announced, where the sole basis for change is that the property is different in condition or character from the surrounding property in the same zoning classification, a finding to the effect that a rezoning would promote the welfare of the community as a whole (which is tantamount to "sound and wise") must be supported by evidence not only proving the difference in situation, but also negating in clear and convincing fashion the probability of substantial resulting detriment to other property likely to be affected. In this case there was no substantial proof to the latter effect; on the contrary, from the evidence introduced there is very little doubt that the residential property in the community would be adversely affected, and probably to a material degree.

The cause is reversed with directions to enter a judgment setting aside the order of the zoning commission.