Argued June 2, affirmed September 10, 1969

ROSETA ET AL, *Respondents, v.* COUNTY OF
WASHINGTON ET AL, *Defendants,* SCHMITT,
*Appellant.*

458 P2d 405

162

*Paul M. Reeder*, Hillsboro, argued the cause and filed briefs for appellant.

*Clifford B. Olsen*, Portland, argued the cause for respondents. With him on the brief were Franklin, Olsen, Bennett, DesBrisay & Jolles, Portland.

Before SLOAN, Presiding Justice, and O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is a declaratory judgment suit brought to test the validity of the action of the Board of Commissioners of Washington County in rezoning a parcel of land owned by defendant Vera Schmitt. The trial court entered a decree declaring the action of the Board void on the ground that it constituted "spot

zoning" and enjoining defendant Schmitt from erecting any building inconsistent with the existing zone.

Defendant Schmitt is the owner of Tax lots 200, 201, 202 and 203. She had constructed an apartment building on Lots 200, 201 and 202 prior to the enactment of the original zoning ordinance enacted in 1959 which zoned the surrounding property including that of plaintiffs as R-10 (single family dwellings). In the original ordinance Lots 200, 201 and 202 were zoned as A-2 (apartment residential) because it was an existing non-conforming use at the time the ordinance was adopted. Since Lot 203 was vacant it was zoned as a part of the surrounding area as R-10.

In 1966 defendant Schmitt applied for a zone change of Lot 203 from R-10 to A-1 (Duplex residential). The Washington County Planning Commission denied defendant's request. She appealed to the Board of Commissioners of Washington County which granted her request and rezoned Lot 203 from R-10 to A-1.

The trial court held that the reclassification of Lot 203 constituted "spot zoning" and was invalid.

The formulation and execution of a land use policy for Washington County is a legislative function vested in the Washington County Board of Commissioners. The Board's authority is derived from ORS Ch 215 which empowers the governing body of a county to enact zoning ordinances and "whatever amendments it believes the public interest requires." (ORS 215.110). Any zoning ordinance adopted by the county must be predicated upon "a comprehensive plan for the use of some or all of the land in the county." (ORS 215.050). The statute sets out the criteria for such a compre-

hensive plan and requires that all legislation by the governing body of the county meet these criteria.[1]

■■ It is axiomatic that a court must not substitute its judgment for that of a legislative or administrative agency on questions of policy within the legislative domain. This axiom applied to the field of zoning precludes the court from interjecting its notions of what constitutes a preferable land use policy when passing upon the validity of a zoning change. We have frequently recognized that we will not interfere with the action of local governing bodies or their agencies in effecting zoning changes "unless the action was clearly unreasonable and arbitrary and had no substantial relation to the legitimate objects sought to be gained."[2]

This broad and vague statement of judicial restraint under the separation of powers doctrine, without further definition, furnishes no helpful guide in drawing the line between action which is arbitrary and

[1] ORS 215.055 provides:

"The plan and all legislation and regulations authorized by ORS 215.010, 215.030, 215.050 to 215.060, 215.104 to 215.233 and 215.460 shall be designed to promote the public health, safety and general welfare and shall be based on the following considerations, among others: The various characteristics of the various areas in the county, the suitability of the areas for particular land uses and improvements, the land uses and improvements in the areas, trends in land improvements, density of development, property values, the needs of economic enterprises in the future development of the areas, natural resources of the county and prospective needs for development thereof, and the public need for healthful, safe, aesthetic surroundings and conditions."

[2] Shaffner v. City of Salem, 201 Or 45 at 51, 268 P2d 599 at 602 (1954); Smith v. County of Washington, 241 Or 380, 406 P2d 545 (1965); Holt v. City of Salem, 192 Or 200, 234 P2d 564 (1951); Page v. City of Portland, 178 Or 632, 165 P2d 280 (1946). See also 8A McQuillin, Municipal Corporations, § 25.278, pp. 265-269 (3d ed 1965).

action which is reasonable. It has been observed that the failure of the courts to identify more definitively the standards relevant in judging the legitimate scope of legislative action in zoning has often resulted in an abdication of the function of judicial review in this field.[⊗] Generally it is assumed that the identification of these standards is necessary to protect adequately the constitutional interests of neighboring property owners. It is not necessary for us to decide in the present case whether this assumption is correct.[⊕] Quite apart from any possible constitutional require-ments, the power of the Board of County Commis-sioners is limited by the enabling act (ORS Ch 215) under which it purports to legislate changes in the character of land use. As we have pointed out above, the statute sets out the standards which must be met

---

[⊗] "There is a compelling need for the Court to formulate new standards of judicial review for zoning and other planning de-cisions. Planners and lawyers are often operating in a legal vacuum because judicial participation has been minimal. * * * In-creased dissatisfaction exists among lawyers and developers be-cause the lack of standards to guide planning commissions and local legislative bodies turns the decision-making process into a series of incomprehensible ad hoc decisions. * * * The failure of the judiciary to participate more actively in the process con-tributes to a vicious circle. Decisions which should be sub-stantively reviewed are not; disrespect for land planning is gen-erated and the community emerges the loser because of the increased difficulty in using zoning to promote the rational de-velopment of the community." Tarlock, Kentucky Planning and Land Use Control Enabling Legislation: An Analysis of the 1966 Revision of K.R.S. Chapter 100, 56 Ky L J 556, 592-93 (1968).

[⊕] See, e.g., Goldston and Scheur, Zoning of Planned Residen-tial Developments, 73 Harv L Rev 241 at 255 (1959); Johnson, Constitutional Law and Community Planning, 20 Law & Contemp Prob 200 (1955); Reps, Discretionary Powers of the Board of Zoning Appeals, 20 Law & Contemp Prob 280 at 293 (1955); Note, 70 Harv L Rev 1428 at 1432 (1957); Administrative Discretion in Zoning, 82 Harv L Rev 668 (1969); Wakefield v. Kraft, 202 Md 136, 96 A2d 27 (1953); North Bay Village v. Blackwell, 88 So2d 524, 526 (Fla 1956); 1 Davis, Administrative Law Treatise, § 2.09 at p. 111 (1958).

before the governing body of the county can legally effect a change. We made note of this limitation on the Board's power in *Smith v. County of Washington,* 241 Or 380, 383-84, 406 P2d 545 (1965). There we said:

"The enabling legislation under which county governments may enact zoning regulations requires the enactment of a comprehensive zoning plan. ORS 215.050. Once a plan is adopted, changes in it should be made only when such changes are consistent with the over-all objectives of the plan and in keeping with changes in the character of the area or neighborhood to be covered thereby."

■ In *Smith v. County of Washington, supra,* we also laid down the principle that once the Board has established a zone and thereafter a change in the character of the use is authorized, the usual presumption of legislative regularity is not recognized and in such a case the Board carries the burden of proving that there has been a change in the neighborhood in order to justify the rezoning of a small tract as an amendment in keeping with the comprehensive plan.[6]

■ There is ample justification for interpreting the enabling statutes to impose this burden of proof upon the Board. ORS Chapter 215 can be regarded as a legislative effort to set up those procedures in the field

---

[6] Offutt v. Board of Zoning Appeals of Baltimore County, 204 Md 551, 105 A2d 219, 222 (1954) is to the same effect:

"When an application is made for reclassification of a tract of land from one zone to another, there is a presumption that the zones established by the original zoning ordinance were well planned and arranged and were intended to be more or less permanent, subject to change only when there are genuine changes in conditions. Therefore, before a zoning board rezones a property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood had changed to such an extent that reclassification ought properly to be made."

See also, Hodge v. Luckett, 357 SW2d 303 (Ky 1962); 1 Yokley, Zoning Law and Practice, § 7-7, p. 325 (3d ed 1965).

of zoning which would best serve to eliminate the evils commonly attendant in zoning practices and procedures. One of the principal evils frequently observed is the practice of granting requests for zoning changes either upon the basis of special privilege or through a failure to see that the change would be inimical to the over-all plan for land use in the locality.[6] One court has described the situation as follows:

"* * * An examination of the multitude of zoning cases that have reached this court leads us to the conclusion that the common practice of zoning agencies, after the adoption of an original ordinance, is simply to wait until some property owner finds an opportunity to acquire a financial advantage by devoting his property to a use other than that for which it is zoned, and then struggle with the question of whether some excuse can be found for complying with his request for a rezoning. The result has been that in most of the rezoning cases reaching the courts there actually has been spot zoning and the courts have upheld or invalidated the change according to how flagrant the violation of true zoning principles has been. It is to be hoped that in the future zoning authorities

---

[6] "In spite of the courts' consistent attitude of disapproval, the integrity of zoning ordinances and the desirability of urban residential areas have been constantly threatened by the possibility of improper variances. By the mid-1930's critics already were charging that 'easy and erratic' variance practices 'nibble away at existing zoning giving special privileges to the chosen few.' More recently, one planning expert estimated that fifty per cent of all board of appeals decisions, the majority of them involving variances, were illegal usurpations of power. The board of appeals variance procedure, conceived as the 'safety valve' of the zoning ordinance, has ruptured into a steady 'leak' through which variations based on improper zoning objectives increasingly escape. The integrity of the comprehensive zoning plan may be seriously eroded by such indiscriminate variances. The incompatible land uses which result from this leak in the variance machinery contribute to the spread of urban blight." Shapiro, The Zoning Ordinance Power—Constructive in Theory, Destructive in Practice, 29 Md L Rev 3, 9 (1969).

will give recognition to the fact that an essential feature of zoning is planning." Tarlock, Kentucky Planning and Land Use Control Enabling Legislation: An Analysis of the 1966 Revision of K.R.S. Chapter 100, 56 Ky LJ 556, 595-96 (1968), quoting from *Fritts v. City of Ashland*, 348 SW2d 712, 714-15 (Ky 1961).

There is recurring recognition in the vast literature on zoning that many of the evils in zoning practice can be ameliorated by a judicial insistence upon the zoning board's compliance with the statutory requirement that any changes in the zoning ordinance be made "in accordance with a comprehensive plan."[7] ORS Chapter 215 can be read as embodying this premise and to that end requiring the Board to prove that when change in land use is authorized it is "in accordance with the comprehensive plan."

In the present case there was no evidence disclosing the considerations, if any, that led the Board to grant defendant's request for a change in the zone. The only evidence adduced by defendant was the testimony of defendant Vera C. Schmitt and a real estate appraiser who also described himself as a "consultant" engaged in advising clients with respect to the adaptability of land for certain uses. No part of this testimony afforded proof that the change sought by defendant Schmitt would be consistent with the comprehensive plan. There was no record of the proceedings of the Board and no member of the Board testified at the trial in the circuit court. There is, therefore, no evidence revealing the Board's purpose in granting the request for change.

■ Defendant argues that the requested change was

---

[7] Haar, "In Accordance With a Comprehensive Plan," 68 Harv L Rev 1154 (1955).

not incompatible with the comprehensive plan because the plan designated the area in question "residential" —a term broad enough to include both R-10 and A-1 classifications. However, the ordinance established a distinction between the two types of use by classifying one area as R-10 and another area as A-1. It must be assumed that the Board had some purpose in making a distinction between these two classifications. It was for defendant to prove that this distinction was not valid or that the change in the character of the use of the Schmitt parcel was not inconsistent with the comprehensive plan.

It was further argued that as a result of the increase in population in the Portland area there was a need for multiple family housing in the R-10 zone. In support of this argument it was pointed out that there were duplexes and apartments in the vicinity of the property in question, thus establishing a pattern of less restricted uses in a residential area consistent with the comprehensive plan. Some, if not all, of these less restricted uses existed prior to the enactment of the zoning ordinance and therefore were exempt from the ordinance as existing non-conforming uses. Moreover these multiple family units to which defendant refers were located on heavily travelled streets. There was no evidence that a comparable flow of traffic resulting from the increase in population extended to the street serving plaintiff's property. In fact the evidence would seem to point to the contrary.

■ But even viewing the evidence most favorably in support of defendant's position, it was not sufficient to meet the burden of proving that the Board's action was consistent with the comprehensive plan. Moreover, granting that the evidence produced at the trial could

support a deviation consistent with the comprehensive plan, we have no way of determining in the absence of written findings by the governing board or its zoning agency (Planning Commission) whether it made its decision upon that basis. Even where the members of the Board testify at the trial in the circuit court that the Board's action was taken only after a full consideration of its effect upon the comprehensive plan, we have nothing more than a self-serving assertion which may not reflect the actual decision-making process at the time the Board allowed the requested change. Since we cannot properly exercise our function of judicial review without a record of adequate findings by the board or the Planning Commission on which it based its decision to allow a change of use within a zone, it is within our province to require such findings as an essential part of the Board's procedure.[9]

We hold that the Board did not meet the burden of proof cast upon it and therefore the decree of the trial court must be affirmed.

The problem presented here is to be distin-

---

[9] " * * * [T]he board should be required to disclose the reasoning by which it justifies its conclusions. This can be accomplished by a requirement that written opinions be filed in every variance case. Such a procedure will not only enhance self-discipline but give the public and the courts insight into the soundness of the conclusions reached by the board." Judicial Control over Zoning Boards of Appeal: Suggestions for Reform, 12 UCLA L Rev 937, 952 (1965). See also Kozesnik v. Montgomery Township, 24 NJ 154, 131 A2d 1 (1957); Schiff v. Board of Zoning Appeals of Baltimore County, 207 Md 365, 114 A2d 644 (1955); American Oil Co. v. Miller, 204 Md 32, 102 A2d 727 (1954); Collins v. Behan, 285 NY 187, 33 NE2d 86 (1941); Note, Validity of a Rezoning Ordinance in Maryland, 13 Md L Rev 242, 252 (1953); Note, The Administration of Zoning Flexibility Devices: An Explanation for Recent Judicial Frustration, 49 Minn L Rev 973 at 998, 1004, 1011 (1965); Babcock, The Zoning Game (1966), pp. 158, 159; 2 Davis, Administrative Law Treatise § 16.06 (1958); 1 Davis, Administrative Law Treatise § 2.09 (1958).

guished from the problem dealt with in *Archdiocese v. Washington County*, decided this day. In the present case the Board purported to amend its ordinance by changing the character of use within an existing zone. In *Archdiocese v. Washington County* the Board did not authorize a use inconsistent with the zone and at variance with the original ordinance but rather acted in accordance with the original ordinance which expressly left open for future consideration the advisability of permitting certain specified uses to be made of land within the zone. This difference in terms of the scope of the judicial review is explained in the *Archdiocese* case.

Decree affirmed.