KNUDSEN ET AL. *v.* MONTGOMERY COUNTY COUNCIL ET AL.

[No. 146, September Term, 1965.]

*Decided February 21, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Lawrence J. Simmons* and *Ivan J. Shefferman* for the appellants.

*Joe M. Kyle,* with whom were *Kyle & Jorgensen* on the brief, for one of the property owners seeking reclassification, an appellee.

*Carter C. Hubbel, Jr., Assistant County Attorney for Montgomery County,* with whom was *Robert G. Tobin, Jr., County Attorney,* on the brief, for the County Council, the other appellee.

BARNES, J., delivered the opinion of the Court.

On May 27, 1964, Baridon LaVay Corporation, as contract purchaser and Beatrice Tait Trussell and James Tait, as owners (applicants), filed an application with the Maryland Na-

tional Capital Park and Planning Commission (Planning Commission) for an amendment to the local zoning ordinance map of the Montgomery County Zoning Ordinance to rezone a parcel of land containing approximately 69,300 square feet lying on the east side of Crescent Street, to the north of Leroy Place in the Seventh Election District of Montgomery County (the subject property) from R-60 (one-family, detached residential) to R-T (town houses).

Most of the subject property is located in the Crestview Subdivision which was recorded on October 8, 1920 in which most of the lots were quite small, having a frontage of only 20 feet. A majority of the homes in the area are built on two or more lots. There are three brick dwellings on the subject property—two at one end and one at the other. There is a large frame house in the middle of the subject property, which is below the grade of Crescent Street. This frame house will be removed to make way for the erection of the proposed town houses. The three brick houses will be retained and fitted into the contemplated town house development.

Most of the houses to the north, south and west of the subject property vary in size but are single family houses and well-kept. To the east of the subject property are two houses with access by a private road to Western Avenue (which forms the District of Columbia boundary line). On the east side of Western Avenue, in the District of Columbia, the area is solidly built with single family dwellings.

The terrain of the subject property is rough and presents difficult construction problems. There are three principal rock outcroppings. The photographs show the large boulders and also the rather steep grades involved. There is a fall from the highest point to the lowest point of 40 feet. There is well over a 20% slope. For over thirty years since the subject property was subdivided it has remained in the same development as existed at the time of the hearing. The only useful areas were built upon, the remaining areas were left undeveloped.

Wilfrid V. Worland, a well qualified architect, testified for the applicants. He stated that in his opinion it would be prohibitive from an economic viewpoint to erect single family units on the undeveloped portions of the subject property because of

the cost of handling the rock and grading. The photographs tend to substantiate this opinion. He explained the proposed town house development which also appears on a plat plan entitled "Proposed Town House Groups in Crestview." The subject property is divided into three parcels on which there would be six units in the southern parcel which would utilize two of the existing brick residences, six units in the center parcel which would replace the existing wooden dwelling, which is to be removed, and seven on the northern parcel which would utilize the remaining brick dwelling. The actual cost of each unit, excluding the land cost, would be $25,000. Parking for the proposed development is to be accomplished by placing parking lots at right angles to Crescent Street, separated by a median strip attractively planted with access to the parking lots by a driveway with a single entrance at the northerly end of the subject property. The three groups of town houses are attractively arranged with broken, rather than a solid front line and are two and one-half stories high. The style of construction will be colonial. Mr. Worland testified that there would be no traffic hazard to any children playing in the back of the subject property and the traffic hazard was minimized on Crescent Street "by not having a number of outlets for private driveways."

Fon J. Montgomery, a qualified architect, testified for those protesting the proposed rezoning, that in his opinion by using three of the 20 foot lots to form a lot with a 60 foot frontage, single family houses could be developed economically. Property owners in the neighborhood were divided in their positions. One property owner testified that he was in favor of the proposed change as he felt "this area needs some stimulation. I have been here 18 years. There has been no new building. There have been no new homes. We are getting older and we are going downhill." Other property owners testified against the granting of the proposed rezoning.

The Technical Staff and the Montgomery County Planning Board recommended that the reclassification be denied, but the Montgomery County Council, sitting as a District Council (District Council) on December 1, 1964 granted the rezoning. It stated in part:

"The District Council disagrees with the Montgomery County Planning Board and its Technical Staff and finds that this application should be granted. The subject property is part of an old subdivision with lots much smaller than the present standard. Though many homes in the area are on multiple lots, only four homes have been erected on the subject property, while the rest of the land has remained undeveloped for many years. The evidence indicates that grade variations and some prominent rock outcroppings are the chief factors in the sparse development of the site and that further development with detached homes would be economically prohibitive because of these factors. The Council has considered the objections raised at the hearing and does not find them persuasive. Granting R-T on this land would cause a relatively small increase in density, would require off-street parking, would not add appreciably to traffic or school loads, and would not detrimentally affect the neighborhood.

"For these reasons and because to grant this application will aid in the accomplishment of a coordinated, comprehensive, adjusted and systematic development of the Maryland-Washington Regional District, the application will be GRANTED."

The R-T (town house) zone had been created by Ordinance 5-32, adopted by the Montgomery County Council on November 12, 1963. As will hereafter be more fully set forth, the basic provisions of R-T zones are quite similar to those of the R-H (multiple-family, high rise planned residential) zone created by the Montgomery County Council by Ordinance 4-124, adopted February 13, 1962. These are both "floating" rather than "Euclidean" zones.

On January 4, 1965 an appeal was filed in the Circuit Court for Montgomery County by Friedrich P. Knudsen, 4912 Crescent Street, Washington 16, D. C., Mrs. Samuel Chaney, 4824 Park Avenue, Washington 16, D. C., and Lawrence J. Simmons, 4852 Rayard Boulevard, Washington 16, D. C., from the

District Council's Resolution of December 1, 1964.[1] In the petition for the appeal filed on January 11, 1965, paragraph 1 recites:

> "That the above named plaintiffs are residents of Montgomery County, Maryland, whose residences are located within the immediate vicinity of the tract of land involved in this rezoning classification and as such are eligible to bring this petition as aggrieved parties according to the principles of law laid down by the Maryland Court of Appeals."

The answers of both the applicants and the District Council denied that the petitioners were aggrieved.

The hearing on the appeal from the resolution of the District Council came on for hearing before Judge Shook, who, on April 13, 1965 rendered an opinion and passed an order affirming the District Council. Judge Shook resolved the issue of whether the petitioners were aggrieved in their favor, but was of the opinion that the Maryland "mistake-change" rule was not applicable as the rezoning was in the nature of a special exception, was governed in this regard by our decision in *Costello v. Sieling,* 223 Md. 24, 161 A. 2d 824 (1960), the rezoning was fairly and reasonably within the scope of the regulations set forth in the new R-T zone and was neither incompatible nor inconsistent with the remainder of the areas in the residential district. The lower court further indicated that in its opinion the issue was fairly debatable and the trial court should not substitute its judgment for that of the District Council. From the trial court's order affirming the resolution of the District Council, this appeal was timely taken.

---

1. It appears that the appeal was filed too late as the 30 day period for filing pursuant to Maryland Rule 812 a would expire on December 31, 1964. The certificate of counsel attached to the order for appeal indicates that copies of the order of appeal were mailed to the Clerk of the Montgomery County Council and counsel for the applicants on December 28, 1964. In any event no point was raised below or on this appeal that the appeal from the Resolution of December 1, 1964 was filed too late and we will not consider it. Maryland Rule 885.

We have concluded that the order affirming the resolution of the District Council should be affirmed.

## I.

The District Council urges upon us in this appeal that the appellants, Mr. Knudsen and Mrs. Chaney,[2] did not establish that they were persons aggrieved having suffered special damage different from that of the public generally. We do not find it necessary to resolve this issue.

## II.

Assuming, without deciding, that Mr. Knudsen and Mrs. Chaney, the appellants, had established that they were aggrieved parties with standing to appeal, we are nevertheless of the opinion that the order of the lower court in affirming the action of the District Council must be affirmed. In our opinion the lower court was correct in holding that Maryland "mistake-change in conditions" rule did not apply in the case at bar.

The provisions of the new R-T zone are obviously similar— and in many instances identical—with the provisions of the R-H zone which we considered in *Beall v. Montgomery County Council*, 240 Md. 77, 212 A. 2d 751 (1965). In *Beall* we reviewed, cited and followed our prior decisions in *Huff v. Board of Zoning Appeals*, 214 Md. 48, 133 A. 2d 83 (1957) and *Costello, supra*. We held that the new Montgomery County R-H zone was a "floating" zone (rather than the conventional "Euclidean" zone) in the nature of a special exception, so that the Maryland "mistake-change" rule did not apply in considering a reclassification to this new zone. Our holding in *Beall, Huff* and *Costello* is equally applicable to the case at bar.

The purpose of the R-T zone and of the R-H zone are quite similar and much of the language is identical. In the R-T zone its purposes include: 1) providing "suitable sites for Town Houses, that will more fully and efficiently utilize available public utilities and services"; 2) providing "the amenities normally associated with less dense zoning categories"; 3) preventing "detrimental effects to the use or development of adjacent properties of the neighborhood"; and 4) promoting "the

---

2. Lawrence J. Simmons apparently did not join in the appeal to this Court.

health, safety, morals, and welfare of the present and future inhabitants of the District and of the County as a whole."

The uses and special exceptions permitted in the R-T zone are also similar to those in the R-H zone except multiple family dwellings other than town houses and retail sales incidental to a multiple-family building are *not permitted* in the R-T zone.

The restrictions in the R-T and R-H zones are comparable. In the R-H zone there is a minimum width of 200 feet at the building line; the R-T zone requires 100 feet. In the R-H zone the minimum lot area for each building is from 1000 to 1400 square feet; in the R-T zone the requirement is 3500 square feet. In the R-H zone the maximum lot coverage is 12%; in the R-T zone, 35%. In the R-H zone the minimum front, side and rear yards are 30 feet; in the R-T zone they are 25, 10 and 20 feet respectively. In the R-H zone 55% of the net lot area must be devoted to green area, as defined; in the R-T zone this requirement is 50%.

Most importantly, the provisions in regard to site plan approval in the regulations for the two zones are almost identical. The Department of Inspection and Licenses must first approve a plan of development. The information required to appear on the plan of development is quite substantial.[3] The Department is to consider the location of buildings, parking areas, and other features with respect to the topography of the lot and its existing natural features, the adequacy of internal streets and driveways, the adequacy and location of the green area provided, bearing in mind the possible effect of irregularly shaped lots and the adequacy, location and screening of parking lots. When approved the plan of development remains valid for 18 months following the date of its approval, and if construction

---

**3.** Two interesting and helpful requirements in the R-T ordinance are the provisions: 1) "It is the intent and purpose of these regulations that Town House development be of varying design to avoid the monotony of development of rows of similarly designed attached dwellings commonly called 'Row houses.'" 2) "Such plan may show no more than four continuous attached houses with the same set back, and the variation in set back must be at least one foot." These provisions, of course, do not appear in the R-H zone ordinance.

has not begun during that period the plan of development is deemed to have lapsed and a new approval by the Department must be obtained. The Department must approve all construction and development under any building permit as conforming to the plan of development and *any departure* from the plan of development is cause for revocation of the building permit and cause for denial of an occupancy permit. When the plan of development is approved, *any change* must be submitted for approval in accordance with the ordinance.

The appellants in a supplement to their brief include the opinion of the District Council in adopting Ordinance No. 5-32 establishing the R-T zone. The District Council stated, *inter alia*, the following:

> "The Council is of the opinion that this new classification with its controls and standards, will enable construction of attractive and desirable residences in areas or on land not ideally suited topographically or otherwise for single-family development. It is to be noted that this zone, as to the R-H and I-3 Zones, provides for site plan approval before issuance of any building permits. Changes made in the proposed ordinance are, in the opinion of the Council, necessary and desirable in the general public welfare."

In view of the similarity of these provisions of the R-T ordinance to those of the R-H ordinance, there is no necessity to consider the question of mistake in the original zoning (although the appellee urges that the evidence justified a possible finding that there was such a mistake) or any change in conditions since the effective date of the comprehensive zoning ordinance. No question is raised that the plot plan in the case at bar does not conform with the regulations applicable to the R-T zone.

### III.

The appellants contend that the opinion of the District Council does not base its opinion upon our holding in *Beall, Huff* and *Costello* and that a rezoning decision cannot be judicially affirmed upon grounds not invoked by the District Council.

As we read the opinion of the District Council, it did not attempt to find any mistake in original zoning or any change in conditions to justify the R-T rezoning. It seems apparent to us that if the District Council was not seeking to apply the provisions of the R-T ordinance, it would have considered the elements of the "mistake-change" rule. In its opinion, the District Council specifically dealt with the elements to be considered in determining whether it should grant R-T zoning. We cannot say, under these circumstances, that the ground on which the District Council decided the matter was different from that on which the lower court decided it.

## IV.

Finally, the appellants claim that the amendment to the Montgomery County Zoning Act,[4] by the Act of 1965, Chapter 449, by which Section 1(76) of the Montgomery County Zoning Act was amended to provide that in an application to rezone shall set forth the names of all persons having a substantial interest in the subject property—those who have 5% or more of the full cash value—and all contract purchasers and holders of options to purchase, has been violated because Crestview Corporation filed a petition and was permitted to intervene in the lower court on January 7, 1965 alleging that it was the owner of most of the subject property and had a valid contract to purchase the remaining portions of the subject property of which it was not the owner. Apart from the fact that the amendment did not become effective until June 1, 1965 after the lower court had decided the case, the petition filed by the applicants showed that the Baridon LaVay Corporation owned all but 11,000 square feet of the subject property, and the remainder was owned by Beatrice Tait Trussell and James Tait whose names and addresses were given. The appellee stated in its brief and reaffirmed at the argument without contradiction that:

> "This ownership has not changed to date, except that the name of the applicant corporation has been changed from Baridon LaVay Corporation to Crestview Corporation."

---

4. Act of 1959, Chapter 780.

446

Compare *Beall, supra* at pages 88-89 of 240 Md., page 757 of 212 A. 2d.

In our opinion, the application complied with the new amendment, assuming for the argument that the amendment is applicable.

*Order affirmed, the appellants to pay the costs.*