BAYER, ET AL. *v.* SISKIND, ET AL.

[No. 397, September Term, 1966.]

*Decided June 7, 1967.*

118

The cause was agued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, MCWILLIAMS and FINAN, JJ.

*John W. Neumann,* with whom were *Kardy, Brannan & Neumann* on the brief for appellant.

*Howard J. Thomas,* with whom were *Bradshaw, Thomas & Yeatman* on the brief for appellees.

BARNES, J., delivered the opinion of the Court.

The Montgomery County Council granted the rezoning application of George Bayer for a change from the existing R-60 classification to an R-H (multiple family, high-rise planned residential) classification for 7.2 acres of a 7.724 acre tract (retaining .5 acres for future street widening purposes) on the west side of University Boulevard, a divided six-lane highway, and the south side of Seek Lane (approximately 40 feet wide) in Takoma Park, in the 13th Election District of Montgomery County. William Siskind, Hugh E. Hegarty, Howard N. Braithwaite, and their respective wives, adjoining or near-by property owners, appealed to the Circuit Court for Montgomery County (Moorman, J.) and that court reversed the order of the County Council. The County Council[1] and the applicant Bayer filed timely appeals from Judge Moorman's order.

The 7.724 acre tract (the subject property) is nearly rectangular in shape, with a frontage of about 400 feet on the west side of University Boulevard and running approximately 990 feet to the west. The south side of Seek Lane bounds the subject property on the north for approximately 600 feet.

The subject property was originally zoned R-60 (one-family, detached residential, with a minimum lot area of 6000 square feet). The Master Plan for Takoma Park-Langley Park and vicinity, adopted September 4, 1963, continued this classifica-

---

1. The County Council requested leave to dismiss its appeal, which was granted on December 8, 1966.

tion. The land immediately to the north, west and south of the subject property is zoned R-60 and is developed with single-family dwellings. Across University Boulevard to the east is land zoned R-10 (multiple-family, high density residential), developed with three-story apartment buildings. Since 1958 there have been 90 zoning changes to higher density or commercial uses within a radius of approximately one mile from the subject property, 13 of which are within the immediate vicinity of the subject property. One witness for the applicant before the County Council testified that these zoning changes established "that the area has changed and is continuing to change to higher density uses" and that "this site is substantially boxed in on all sides with high density usage." For reasons later appearing in this opinion, it is not necessary to consider more fully these changes in zoning and in use.

On November 30, 1964, the applicant filed a rezoning application to change the existing R-60 zone to either an R-10 or an R-H zone. The R-H zone is a "floating" zone for high-rise apartments. In requesting the change to R-10 zoning, the applicant proposed to erect a 9-story apartment building covering 12% of the land in the subject property. There would be green space of over 50%, a set back of 80 feet from the south lot line, 90 feet from the north lot line and considerably farther set backs from the east and west lot lines. There would be outside parking for 366 automobiles, and 105 underground spaces. The design for R-H zoning, contemplated the erection of a 13-story apartment building, with two floors of garages in addition to outside parking. The land coverage of the building would be 8% and there would be over 55% of green space. The set backs would be approximately the same as provided for in the proposal for R-10 zoning.

At the hearing before the County Council, the applicant produced four witnesses—an architect, a traffic expert, a planning expert and realtor. The architect gave the details of the site plan and of the two proposals for R-10 or R-H zoning, respectively. He indicated that of the two proposals, he preferred the proposal for the R-H zoning. When counsel for the applicant asked "Are there any questions of this witness?", the stenographic record indicates that there was no response.

The traffic expert had made a detailed study of the relevant traffic situation and gave his findings in detail in a report submitted to the County Council and a summary of his findings in his testimony. He testified that, in his opinion, the proposed apartments would not create dangerous or otherwise objectionable traffic conditions. The following then occurred:

"Mr. Neumann [counsel for the applicant] : Are there any questions of this witness?

"From the floor: May we ask him a question?

"Miss Diggs [chairman of the County Council] : No sir, we do not allow cross-examination, I am sorry."

The planning expert submitted an elaborate report to the County Council, listing in detail many of the zoning changes in the area which he considered relevant and an aerial map indicating these changes. He gave the reasons for his opinion that the subject property should be rezoned for apartment use and that there was a need for such use in the neighborhood. There were no additional questions asked this witness and permission to cross-examine was not sought.

The realtor testified that, in his opinion, the construction of anything other than high density construction on the subject property "would not be feasible" and that the subject property "cannot reasonably be developed in the existing R-60 classification" and gave his reasons for his opinion. At the conclusion of his testimony, counsel for the applicant inquired as to whether there were "further questions of this witness?" and the transcript recited "(There was no response)." Miss Diggs, the chairman, then indicated that the record would be held open for a period of ten days.

During the ten day period, William Siskind, an adjoining property owner, submitted a letter by which he registered the objection of himself and wife to the granting of the application. In his letter, Mr. Siskind analyzed the testimony given on behalf of the applicant before the County Council and urged the disapproval of the application because this testimony had not, in his opinion, shown any error in original zoning or any change in the character of the neighborhood. Chester V. Parker, another adjoining property owner, also filed a letter opposing the grant-

ing of the application, alleging that a traffic hazard would be created and that there had been no change in the character of the neighborhood or any mistake in original zoning.

At the time of the hearing before the County Council a petition was filed, signed by the president of the Rolling Terrace Civic Association together with the signatures of 156 property owners, representing some 123 properties in the general area, at least six of which were directly affected by the application. The petition gave several reasons for opposition to the proposed rezoning, including the depreciation of single-family residential properties adjoining the subject property, traffic problems, destruction of privacy, lack of proof of a mistake in original zoning or a change in the character of the neighborhood and lack of conformity with the master plan.

The Montgomery County Planning Board and its Technical Staff recommended that the County Council deny the application. The Technical Staff found no change in the character of development nor mistake in original zoning and indicated that it wished to "preserve an enclave of single family uses" in the residential area, and to prevent further expansion of the high density area.

The County Council disagreed with the Planning Board and the Technical Staff and, on August 31, 1965, rendered an opinion and passed a resolution granting the application for reclassification to the R-H zone. The following findings were made:

"Although the subject property is abutted by single-family uses to the north, west and south, the immediately adjacent property in this area is a collection of R-10, R-30, C-1 and R-60 uses. Since 1958 there have been some 90 changes of zoning in this area to a higher density or commercial uses. There have been at least 13 such changes in the immediate area. The effect of all these changes is to create an existing high-density community.

"The Council is of the opinion that, from the record, single-family development of this tract is now highly unlikely. Further, the Council finds that, while the requested R-10 classification is not appropriate

here, *the R-H classification for the subject property would be compatible with other uses in the area and would result in no adverse effect on single-family development nearby.*

"For these reasons, and to aid in the accomplishment of a coordinated, comprehensive, adjusted and systematic development of the Maryland-Washington Regional District, this application will be denied for R-10 and granted for the R-H zone for 7.2 acres." (Emphasis supplied).

The Siskinds, Hegartys and Braithwaites, above mentioned, filed a timely petition to appeal to the Circuit Court for Montgomery County, alleging that the action of the County Council was arbitrary, capricious and void for the following reasons:

1. There was no evidence produced at the hearing that there had been a mistake in original zoning or a change in the character of the neighborhood.

2. The granting of the application was spot zoning and piecemeal zoning.

3. The applicant failed to meet the burden of proof of strong, substantial, supporting facts to overcome the strong presumption of the correctness of original zoning.

4. Most of the 90 changes considered by the County Council were far too removed to affect the subject property and most of them were zoned in accordance with the master plan.

5. The County Council misinterpreted and misapplied the evidence in regard to traffic, noise, safety and adverse impact on neighboring properties.

6. The action of the County Council was without consideration of the public health, safety and welfare of the general public and of the petitioners in particular.

It will be noted that the petitioners *did not allege* that any of them had been denied any right of cross-examination.

Judge Moorman, in reversing the order of the County Council, stated in his memorandum opinion that four issues had been raised by the petition and answers, i.e., (1) Did the "change-mistake rule" have any application?; (2) Was the "floating zone" theory applicable?; (3) Did the principles of

res judicata apply? and (4) Were the petitioners denied the right of cross-examination and, if so, did it result in denial of due process of law? He considered the last question to be the most important question in the appeal, and decided that there was a denial of the right of cross-examination so prejudicial that it amounted to a denial of due process. He did not pass upon the other questions mentioned.

We have concluded that the lower court was in error, and its order must be reversed.

### 1. Cross-examination

In *Hyson v. Montgomery County Council*, 242 Md. 55, 217 A. 2d 578 (decided February 11, 1966, after the hearing and order of the County Council in the present case), it was stated that in a case in Montgomery County like the present one, there was a right of cross-examination, but the holding was that the right had been waived in that case and there was no denial of due process. In *Town of Somerset v. Montgomery County Board of Appeals*, 245 Md. 52, 65-67, 225 A. 2d 294 (decided after *Hyson*), we stated that because the proceeding was adversary in nature there was a right of cross-examination in an application for a special exception for an apartment hotel in an R-H zone and held that since this right was properly asserted, the denial of the right resulted in a denial of due process of law. It is clear that in the case at bar the right of cross-examination did exist, although the County Council could not, of course, be aware of our decision to that effect announced subsequent to the hearing.

The question in the case at bar—as in *Hyson*—is whether the right to cross-examination was waived because improperly raised and preserved by the appellees. In our opinion the right was waived. In regard to all the witnesses, other than the traffic expert, no request for cross-examination was made by any one. The only mention of cross-examination came at the conclusion of the testimony of the traffic expert and we have set out *verbatim* what then occurred. A "voice from the floor" asked permission to "ask a question." The "voice" was never identified and the nature of the proposed question was not stated. The chairman stated "We do not allow cross-examination,"

and the matter was not pursued. There is no allegation in the petition for appeal that the "voice" was that of any of the appellees; yet, had any of them been denied the right to cross-examine, we would expect the point to have been subsequently alleged or proved before the Circuit Court.

It was suggested in the opinion of the Circuit Court that the chairman's denial of cross-examination to the "unidentified voice" was unequivocal and final so that it would have been useless for the appellees themselves to object to the ruling. However, we point out that the right of cross-examination of a person who merely attends the hearing is by no means coextensive with the right of those who are actually parties to the proceeding. See 2 Rathkopf, *Law of Zoning and Planning,* sec. 43-18 (3d ed). In light of this distinction, we cannot agree that the chairman's statement may be deemed an unequivocal denial of cross-examination to the appellees. Under the circumstances, if the appellees did not intend to acquiesce in the chairman's ruling, they were required to object, either formally or informally, at the time the ruling was made or thereafter. Otherwise the point is waived. *Hyson v. Montgomery County Council, supra; Severn v. Baltimore City,* 230 Md. 160, 186 A. 2d 199 (1962) ; *Overton v. Board of County Comm'rs of Prince George's County,* 223 Md. 141, 146, 162 A. 2d 457 (1960).

We now turn to the other issues in the case.

### 2. The R-H zone was a "floating zone."

We held in *Beall v. Montgomery County Council,* 240 Md. 77, 212 A. 2d 751 (1965), relying upon our prior decisions in *Huff v. Board of Zoning Appeals,* 214 Md. 48, 133 A. 2d 83 (1957) and *Costello v. Sieling,* 223 Md. 24, 161 A. 2d 824 (1960), that the R-H zone, involved in the present case, was a "floating zone" in the nature of a special exception and that the "change-mistake" rule did not apply when the County Council passed upon an application to grant R-H zoning. We followed *Beall* in *O. F. Smith Bros. Dev. Corp. v. Montgomery County Council,* 246 Md. 1, 227 A. 2d 1 (1967) ; *Tauber v. Montgomery County Council,* 244 Md. 332, 223 A. 2d 615 (1966) ; and in *Knudsen v. Montgomery County Council,* 241 Md. 436, 217 A. 2d 97 (1966). It is, therefore, not necessary

to consider the rather elaborate testimony before the County Council in regard to alleged changes in the neighborhood or the contention of the appellees that most of the changes did not affect the "neighborhood" of the subject property. The only questions presented to us, in reviewing the County Council's reclassification to the R-H zone, are whether the County Council found that the proposal in this case complied with the purposes of the R-H zone [2] and whether there was sufficient evidence before the County Council to make that finding fairly debatable. Unlike the situation in *Bujno v. Montgomery County Council*, 243 Md. 110, 220 A. 2d 126 (1966), where the finding by the County Council was *inferred* from the opinion of the County Council and the record, there is in the present case an *express finding* that the proposal would be "compatible with other uses in the area and would result in no adverse effect on the single-family development nearby." This finding, together with the testimony of the architect already mentioned and a consideration of Exhibit 23 introduced into evidence at the hearing and showing in detail the proposal for the R-H zoning, are sufficient to establish compliance with the provisions of the zoning ordinance in regard to the R-H zone.

### 3. *"Res judicata"*

Although neither the petition to appeal to the Circuit Court filed below by the appellees nor their brief in this Court raise the point, the lower court apparently heard arguments on the question of so-called "res judicata" because previous applications had been filed for a portion of the subject property for reclassification to an R-10 zone, and in 1962 the County Council denied these applications. Judge Moorman did not pass on the question, although his opinion mentions it as an issue. It is sufficient to observe that even if it be assumed that the principle of "res judicata"—or more accurately, the principle that a mere change of mind, without any change in the underlying facts or conditions, may indicate arbitrary, unreasonable and

---

2. We set out in detail in Beall v. Montgomery County Council, 240 Md. at 81-84, 212 A. 2d at 753, the provisions of the Montgomery County Code in regard to the purposes and requirements of R-H zoning. See § 111-12 Montgomery County Code (1965).

126

capricious conduct by the County Council—is applicable, it is clear that a prior consideration by the County Council of a *part* of the subject property for a zoning classification other than R-H would not invoke the principle. The property, the applicant and the zone involved in the prior applications were all different from those involved in the present case. See *Bujno v. Montgomery County Council, supra.* Cf. *Woodlawn Area Citizens Ass'n, Inc. v. Board of County Comm'rs for Prince George's County,* 241 Md. 187, 216 A. 2d 149 (1966).

> *Order of the Circuit Court for Montgomery County reversing the order of the Montgomery County Council, reversed, the costs to be paid by the appellees.*