Argued March 1, re-argued November 15, 1972,
affirmed March 2, 1973

# FASANO ET AL, *Respondents, v.* BOARD OF COUNTY COMMISSIONERS OF WASHINGTON COUNTY ET AL, *Petitioners.*

507 P2d 23

*Edward J. Sullivan,* Washington County Counsel, Hillsboro, argued and reargued the cause for petitioners. With him on the briefs were William Bradley Duncan, Assistant County Counsel, Carrell F. Bradley, Joe D. Bailey, and Schwenn, Bradley, Batchelor & Bailey, Hillsboro.

*Louis J. Fasano,* Portland, argued and reargued the cause for respondents. With him on the briefs were Veatch, Lovett & Stiner, Portland.

*Donald C. Ashmanskas,* Beaverton, argued the cause for amici curiae on reargument. With him on the briefs were James M. Mattis, Eugene, Merle Long, Albany, and Edward C. Harms, Jr., Springfield, on behalf of the League of Oregon Cities. Also on the briefs were Duane R. Ertsgaard, Salem, Roy E. Adkins, Eugene, Richard Crist, West Linn, Paul Mackey, Portland, and Gary Rueter, McMinnville, on behalf of

the Association of Oregon Counties; and Frank L. Whitaker, Portland, on behalf of Oregon Chapter, American Institute of Planners.

HOWELL, J.

The plaintiffs, homeowners in Washington county, unsuccessfully opposed a zone change before the Board of County Commissioners of Washington County. Plaintiffs applied for and received a writ of review of the action of the commissioners allowing the change. The trial court found in favor of plaintiffs, disallowed the zone change, and reversed the commissioners' order. The Court of Appeals affirmed, 7 Or App 176, 489 P2d 693 (1971), and this court granted review.

The defendants are the Board of County Commissioners and A.G.S. Development Company. A.G.S., the owner of 32 acres which had been zoned R-7 (Single Family Residential), applied for a zone change to P-R (Planned Residential), which allows for the construction of a mobile home park. The change failed to receive a majority vote of the Planning Commission. The Board of County Commissioners approved the change and found, among other matters, that the change allows for "increased densities and different types of housing to meet the needs of urbanization over that allowed by the existing zoning."

The trial court, relying on its interpretation of *Roseta v. County of Washington*, 254 Or 161, 458 P2d 405, 40 ALR3d 364 (1969), reversed the order of the commissioners because the commissioners had not shown any change in the character of the neighborhood which would justify the rezoning. The Court of Ap-

peals affirmed for the same reason, but added the additional ground that the defendants failed to show that the change was consistent with the comprehensive plan for Washington county.

According to the briefs, the comprehensive plan of development for Washington county was adopted in 1959 and included classifications in the county for residential, neighborhood commercial, retail commercial, general commercial, industrial park and light industry, general and heavy industry, and agricultural areas.

The land in question, which was designated "residential" by the comprehensive plan, was zoned R-7, Single Family Residential.

Subsequent to the time the comprehensive plan was adopted, Washington county established a Planned Residential (P-R) zoning classification in 1963. The P-R classification was adopted by ordinance and provided that a planned residential unit development could be established and should include open space for utilities, access, and recreation; should not be less than 10 acres in size; and should be located in or adjacent to a residential zone. The P-R zone adopted by the 1963 ordinance is of the type known as a "floating zone," so-called because the ordinance creates a zone classification authorized for future use but not placed on the zoning map until its use at a particular location is approved by the governing body. The R-7 classification for the 32 acres continued until April 1970 when the classification was changed to P-R to permit the defendant A.G.S. to construct the mobile home park on the 32 acres involved.

The defendants argue that (1) the action of the county commissioners approving the change is pre-

sumptively valid, requiring plaintiffs to show that the commissioners acted arbitrarily in approving the zone change; (2) it was not necessary to show a change of conditions in the area before a zone change could be accomplished; and (3) the change from R-7 to P-R was in accordance with the Washington county comprehensive plan.

We granted review in this case to consider the questions—by what standards does a county commission exercise its authority in zoning matters; who has the burden of meeting those standards when a request for change of zone is made; and what is the scope of court review of such actions?

Any meaningful decision as to the proper scope of judicial review of a zoning decision must start with a characterization of the nature of that decision. The majority of jurisdictions state that a zoning ordinance is a legislative act and is thereby entitled to presumptive validity. This court made such a characterization of zoning decisions in *Smith v. County of Washington,* 241 Or 380, 406 P2d 545 (1965):

> "Inasmuch as ORS 215.110 specifically grants to the governing board of the county the power to amend zoning ordinances, a challenged amendment is a legislative act and is clothed with a presumption in its favor. *Jehovah's Witnesses v. Mullen et al,* 214 Or 281, 292, 330 P2d 5, 74 ALR2d 347 (1958), appeal dismissed and cert. denied, 359 US 436, 79 S Ct 940, 3 L Ed2d 932 (1959)." 241 Or at 383.

However, in *Smith* an exception to the presumption was found and the zoning held invalid. Furthermore, the case cited by the *Smith* court, *Jehovah's Witnesses v. Mullen et al,* supra, at least at one point viewed the contested zoning in that case as an administrative as opposed to legislative act.

At this juncture we feel we would be ignoring reality to rigidly view all zoning decisions by local governing bodies as legislative acts to be accorded a full presumption of validity and shielded from less than constitutional scrutiny by the theory of separation of powers. Local and small decision groups are simply not the equivalent in all respects of state and national legislatures. There is a growing judicial recognition of this fact of life:

> "It is not a part of the legislative function to grant permits, make special exceptions, or decide particular cases. Such activities are not legislative but administrative, quasi-judicial, or judicial in character. To place them in the hands of legislative bodies, whose acts as such are not judicially reviewable, is to open the door completely to arbitrary government." *Ward v. Village of Skokie,* 26 Ill2d 415, 186 NE2d 529, 533 (1962) (Klingbiel, J., specially concurring).

The Supreme Court of Washington, in reviewing a rezoning decision, recently stated:

> "Whatever descriptive characterization may be otherwise attached to the role or function of the planning commission in zoning procedures, *e.g.*, advisory, recommendatory, investigatory, administrative or legislative, it is manifest * * * that it is a public agency, * * * a principle [sic] and statutory duty of which is to conduct public hearings in specified planning and zoning matters, enter findings of fact—often on the basis of disputed facts—and make recommendations with reasons assigned thereto. Certainly, in its role as a hearing and fact-finding tribunal, the planning commission's function more nearly than not partakes of the nature of an administrative, quasi-judicial proceeding, * * *." *Chrobuck v. Snohomish County,* 78 Wash 2d 884, 480 P2d 489, 495-96 (1971).

Ordinances laying down general policies without

regard to a specific piece of property are usually an exercise of legislative authority, are subject to limited review, and may only be attacked upon constitutional grounds for an arbitrary abuse of authority. On the other hand, a determination whether the permissible use of a specific piece of property should be changed is usually an exercise of judicial authority and its propriety is subject to an altogether different test. An illustration of an exercise of legislative authority is the passage of the ordinance by the Washington County Commission in 1963 which provided for the formation of a planned residential classification to be located in or adjacent to any residential zone. An exercise of judicial authority is the county commissioners' determination in this particular matter to change the classification of A.G.S. Development Company's specific piece of property. The distinction is stated, as follows, in Comment, *Zoning Amendments— The Product of Judicial or Quasi-Judicial Action*, 33 Ohio St L J 130 (1972) :

> "* * * Basically, this test involves the determination of whether action produces a general rule or policy which is applicable to an open class of individuals, interest, or situations, or whether it entails the application of a general rule or policy to specific individuals, interests, or situations. If the former determination is satisfied, there is legislative action; if the latter determination is satisfied, the action is judicial." 33 Ohio St L J at 137.

■ We reject the proposition that judicial review of the county commissioners' determination to change the zoning of the particular property in question is limited to a determination whether the change was arbitrary and capricious.

In order to establish a standard of review, it is

necessary to delineate certain basic principles relating to land use regulation.

The basic instrument for county or municipal land use planning is the "comprehensive plan." Haar, *In Accordance with a Comprehensive Plan,* 68 Harv L Rev 1154 (1955); 1 Yokley, Zoning Law and Practice, § 3-2 (1965); 1 Rathkopf, The Law of Zoning and Planning, § 9-1 (3d ed 1969). The plan has been described as a general plan to control and direct the use and development of property in a municipality. *Nowicki v. Planning and Zoning Board,* 148 Conn 492, 172 A2d 386, 389 (1961).

■ In Oregon the county planning commission is required by ORS 215.050 to adopt a comprehensive plan for the use of some or all of the land in the county. Under ORS 215.110(1), after the comprehensive plan has been adopted, the planning commission recommends to the governing body of the county the ordinances necessary to "carry out" the comprehensive plan. The purpose of the zoning ordinances, both under our statute and the general law of land use regulation, is to "carry out" or implement the comprehensive plan. 1 Anderson, American Law of Zoning, § 1.12 (1968). Although we are aware of the analytical distinction between zoning and planning, it is clear that under our statutes the plan adopted by the planning commission and the zoning ordinances enacted by the county governing body are closely related; both are intended to be parts of a single integrated procedure for land use control. The plan embodies policy determinations and guiding principles; the zoning ordinances provide the detailed means of giving effect to those principles.

ORS 215.050 states county planning commissions "shall adopt and may from time to time revise a com-

prehensive plan." In a hearing of the Senate Committee on Local Government, the proponents of ORS 215.050 described its purpose as follows:

"* * * The intent here is to require a basic document, geared into population, land use, and economic forecasts, which should be the basis of any zoning or other regulations to be adopted by the county. * * *"[1]

In addition, ORS 215.055 provides:

"215.055 Standards for plan. (1) The plan and all legislation and regulations authorized by ORS 215.010 to 215.233 shall be designed to promote the public health, safety and general welfare and shall be based on the following considerations, among others: The various characteristics of the various areas in the county, the suitability of the areas for particular land uses and improvements, the land uses and improvements in the areas, trends in land improvement, density of development, property values, the needs of economic enterprises in the future development of the areas, needed access to particular sites in the areas, natural resources of the county and prospective needs for development thereof, and the public need for healthful, safe, aesthetic surroundings and conditions."

■ We believe that the state legislature has conditioned the county's power to zone upon the prerequisite that the zoning attempt to further the general welfare of the community through consciousness, in a prospective sense, of the factors mentioned above. In other words, except as noted later in this opinion, it must be proved that the change is in conformance with the comprehensive plan.

■ In proving that the change is in conformance

---

[1] Hearing on Senate Bill 129 before the Senate Committee on Local Government, 52nd Legislative Assembly, February 14, 1963.

with the comprehensive plan in this case, the proof, at a minimum, should show (1) there is a public need for a change of the kind in question, and (2) that need will be best served by changing the classification of the particular piece of property in question as compared with other available property.

In the instant case the trial court and the Court of Appeals interpreted prior decisions of this court as requiring the county commissions to show a change of conditions within the immediate neighborhood in which the change was sought since the enactment of the comprehensive plan, or a mistake in the comprehensive plan as a condition precedent to the zone change.

In *Smith v. Washington County*, supra, the land in question was designated residential under the comprehensive plan, and the county commissioners enacted an amendatory ordinance changing the classification to manufacturing. This court held that the change constituted spot zoning and was invalid. We stated:

"* * * Once a [zoning scheme] is adopted, changes in it should be made only when such changes are consistent with the over-all objectives of the plan *and in keeping with changes in the character of the area or neighborhood to be covered thereby.* * * *" (Emphasis added) 241 Or at 384.

In *Roseta v. Washington County*, supra, the land in question was classified as residential under the comprehensive plan and had been originally zoned as R-10, Single Family Residential. The county commissioners granted a zone change to A-1, Duplex Residential. We held that the commissioners had not sustained the burden of proving that the change was consistent with the comprehensive plan and reversed the order

allowing the zone change. In regard to defendants' argument that the change was consistent with the comprehensive plan because the plan designated the areas as "residential" and the term included both single family dwellings and duplex residences, we stated:

> "* * * However, the ordinance established a distinction between the two types of use by classifying one area as R-10 and another area as A-1. It must be assumed that the Board had some purpose in making a distinction between these two classifications. It was for defendant to prove that this distinction was not valid or that the change in the character of the use of the * * * parcel was not inconsistent with the comprehensive plan." 254 Or at 169.

The instant case could be distinguished from *Roseta* on the basis that we are involved with a floating zone which was not before the court in *Roseta*.[2]

■ However, *Roseta* should not be interpreted as establishing a rule that a physical change of circumstances within the rezoned neighborhood is the only justification for rezoning. The county governing body is directed by ORS 215.055 to consider a number of other factors when enacting zoning ordinances, and the list there does not purport to be exclusive. The important issues, as *Roseta* recognized, are compliance

---

[2] Even in Maryland, the chief exponent of the change or mistake rule, the courts have not required that there be a showing of changed conditions or mistake in the original zoning as a condition precedent to granting a zone change when a floating zone is involved. Bigenho v. Montgomery County Council, 248 Md 386, 237 A2d 53 (1968); Bayer v. Siskind, 247 Md 116, 230 A2d 316 (1967); Board of County Com'rs of Howard County v. Tipton, 244 Md 77, 222 A2d 701 (1966); Bujno v. Montgomery County Council, 243 Md 110, 220 A2d 126 (1966); Knudsen v. Montgomery County Council, 241 Md 436, 217 A2d 97 (1966); Beall v. Montgomery County Council, 240 Md 77, 212 A2d 751 (1965); Huff v. Board of Zoning Appeals, 214 Md 48, 133 A2d 83 (1957).

with the statutory directive and consideration of the proposed change in light of the comprehensive plan.

■ ■ Because the action of the commission in this instance is an exercise of judicial authority, the burden of proof should be placed, as is usual in judicial proceedings, upon the one seeking change. The more drastic the change, the greater will be the burden of showing that it is in conformance with the comprehensive plan as implemented by the ordinance, that there is a public need for the kind of change in question, and that the need is best met by the proposal under consideration. As the degree of change increases, the burden of showing that the potential impact upon the area in question was carefully considered and weighed will also increase. If other areas have previously been designated for the particular type of development, it must be shown why it is necessary to introduce it into an area not previously contemplated and why the property owners there should bear the burden of the departure.[9]

---

[9] For example, if an area is designated by the plan as generally appropriate for residential development, the plan may also indicate that some high-density residential development within the area is to be anticipated, without specifying the exact location at which that development is to take place. The comprehensive plan might provide that its goal for residential development is to assure that residential areas are healthful, pleasant and safe places in which to live. The plan might also list the following policies which, among others, are to be pursued in achieving that goal:

1. High-density residential areas should be located close to the urban core area.

2. Residential neighborhoods should be protected from any land use activity involving an excessive level of noise, pollution or traffic volume.

3. High trip-generating multiple family units should have ready access to arterial or collector streets.

4. A variety of living areas and housing types should be pro-

■ Although we have said in *Roseta* that zoning changes may be justified without a showing of a mistake in the original plan or ordinance, or of changes in the physical characteristics of an affected area, any of these factors which are present in a particular case would, of course, be relevant. Their importance would depend upon the nature of the precise change under consideration.

By treating the exercise of authority by the commission in this case as the exercise of judicial rather than of legislative authority and thus enlarging the scope of review on appeal, and by placing the burden of the above level of proof upon the one seeking change, we may lay the court open to criticism by legal scholars who think it desirable that planning authorities be vested with the ability to adjust more freely to changed conditions. However, having weighed the dangers of making desirable change more difficult

---

vided appropriate to the needs of the special and general groups they are to serve.

5. Residential development at urban densities should be within planned sewer and water service areas and where other utilities can be adequately provided.

Under such a hypothetical plan, property originally zoned for single family dwellings might later be rezoned for duplexes, for garden apartments, or for high-rise apartment buildings. Each of these changes could be shown to be consistent with the plan. Although in addition we would require a showing that the county governing body found a bona fide need for a zone change in order to accommodate new high-density development which at least balanced the disruption shown by the challengers, that requirement would be met in most instances by a record which disclosed that the governing body had considered the facts relevant to this question and exercised its judgment in good faith. However, these changes, while all could be shown to be consistent with the plan, could be expected to have differing impacts on the surrounding area, depending on the nature of that area. As the potential impact on the area in question increases, so will the necessity to show a justification.

against the dangers of the almost irresistible pressures that can be asserted by private economic interests on local government, we believe that the latter dangers are more to be feared.

■ What we have said above is necessarily general, as the approach we adopt contains no absolute standards or mechanical tests. We believe, however, that it is adequate to provide meaningful guidance for local governments making zoning decisions and for trial courts called upon to review them. With future cases in mind, it is appropriate to add some brief remarks on questions of procedure. Parties at the hearing before the county governing body are entitled to an opportunity to be heard, to an opportunity to present and rebut evidence, to a tribunal which is impartial in the matter—i.e., having had no pre-hearing or ex parte contacts concerning the question at issue—and to a record made and adequate findings executed. Comment, *Zoning Amendments—The Product of Judicial or Quasi-Judicial Action*, 33 Ohio St L J 130-143 (1972).

■ ■ When we apply the standards we have adopted to the present case, we find that the burden was not sustained before the commission. The record now before us is insufficient to ascertain whether there was a justifiable basis for the decision. The only evidence in the record, that of the staff report of the Washington County Planning Department, is too conclusory and superficial to support the zoning change. It merely states:

"The staff finds that the requested use does conform to the residential designation of the Plan of Development. It further finds that the proposed use reflects the urbanization of the County and the necessity to provide increased densities and differ-

ent types of housing to meet the needs of urbanization over that allowed by the existing zoning. * * *"

Such generalizations and conclusions, without any statement of the facts on which they are based, are insufficient to justify a change of use. Moreover, no portions of the comprehensive plan of Washington County are before us, and we feel it would be improper for us to take judicial notice of the plan without at least some reference to its specifics by counsel.

As there has not been an adequate showing that the change was in accord with the plan, or that the factors listed in ORS 215.055 were given proper consideration, the judgment is affirmed.

BRYSON, J., specially concurring.

The basic facts in this case exemplify the prohibitive cost and extended uncertainty to a homeowner when a governmental body decides to change or modify a zoning ordinance or comprehensive plan affecting such owner's real property.

This controversy has proceeded through the following steps:

1. The respondent opposed the zone change before the Washington County Planning Department and Planning Commission.

2. The County Commission, after a hearing, allowed the change.

3. The trial court reversed (disallowed the change).

4. The Court of Appeals affirmed the trial court.

5. We ordered reargument and additional briefs.

6. This court affirmed.

The principal respondent in this case, Fasano, happens to be an attorney at law, and his residence is near the proposed mobile home park of the petitioner A.G.S. No average homeowner or small business enterprise can afford a judicial process such as described above nor can a judicial system cope with or endure such a process in achieving justice. The number of such controversies is ascending.

In this case the majority opinion, in which I concur, adopts some sound rules to enable county and municipal planning commissions and governing bodies, as well as trial courts, to reach finality in decision. However, the procedure is no panacea and it is still burdensome.

It is solely within the domain of the legislative branch of government to devise a new and simplified statutory procedure to expedite finality of decision.