DADE COUNTY ASSOCIATION OF UNINCORPORATED AREAS, Inc., et al v.
BOARD OF COUNTY COMMISSIONERS OF
METROPOLITAN DADE COUNTY, et al.
No. 75-26308.
Circuit Court, Dade County.
December 3, 1975.

Sidney B. Shapiro, Miami, for the petitioners.

Stuart L. Simon, County Attorney, Robert A. Ginsburg and Stanley B. Price, Assistant County Attorneys, for the respondent Dade County.

M. Sue Barrett and John R. Farrell, both of Miami, for the respondent Sam Marks.

JACK M. TURNER, Circuit Judge.

*Final order granting writ of certiorari:* This cause came before the court on the record (testimony and exhibits) before the board of county commissioners of Dade County, the briefs and argument of counsel. From the foregoing the court makes the following findings of fact and conclusions of law —

### Findings of fact

1. The subject property is located in Dade County, and is legally described as follows —

> Tracts 118 and 119, Dade County Development Co., as recorded in P. B. 3 at P. 169 of the Public Records of Dade County, Florida, also described as the north side of S.W. 72nd Street, between approximately 330′ west of S.W. 92nd Ave. and theo. S.W. 93rd Place,

and consists of less than ten acres.

2. In 1969 the previous owner of the property, George T. Mann, filed an application for a district boundary change on the property from AU (agricultural) to RU-4M (multiple family residential — 35.9 units per acre). The application was denied by the Dade County Commission.

3. In 1970 Mann filed another application for district boundary change, this time requesting a classification of RU-4L (multiple family residential — 23 units per acre). This application was also denied.

4. Sam Marks acquired the property on January 28, 1971.

5. Soon after acquisition, Marks filed an application for district boundary change wherein he also requested a classification of RU-4L on the property. This application was denied by the commission but the property was rezoned at that time from AU to RU-1 (single family residential).

Marks filed a petition for writ of certiorari in the circuit court under Case No. 71-22683. On March 7, 1973, the petition was denied. Marks then appealed from the denial of the petition to the Third District Court of Appeal which court affirmed, per curiam, without opinion, on February 26, 1974. *Marks v. Dade County*, Fla. App. 1974, 290 So.2d 583.

6. On or about March 6, 1975, Marks filed the subject application wherein he requested a district boundary change from RU-1 to RU-4L. This application also requested the granting of an unusual use to permit a specific entrance feature, a variance of the parking requirements to permit 206 spaces where 288 were required, and a variance from the requirement that all accessory uses be located behind the principal building to allow same in front of the principal building.

Both the planning department and the building and zoning department of Metropolitan Dade County recommended the application be denied.

The plans accompanying the application showed 192 small apartment units to be built on the property. Marks' application also included a Declaration of Restrictive Covenants running with the land which purports to require the subject property to be exclusively used for "nonprofit" housing for "senior citizens."

7. The subject property fronts on S.W. 72nd Street (Sunset Drive), a major east-west arterial street. Land fronting on Sunset Drive shows a variety of uses including single family residential, business, office, commercial and high density residential particularly in the vicinity of S.W. 87th Avenue (Galloway Road),

approximately five blocks to the east. The subject property immediately abuts a church and single-family cluster housing to the west and RU-1 (single family) zoned property to the north, to the east, to the southeast and to the southwest.

8. The Sunset Drive Area Restudy (prepared by the Dade County Planning Department) was completed in February, 1973, and passed and adopted by the board of county commissioners on March 21, 1973. This restudy recommended the subject property be zoned in the classification of RU-1 (single family residential).

9. On June 18, 1975, the Dade County Commission passed and enacted Ordinance No. 75-48 which declared the Sunset Drive Restudy, among others, to be a refinement of the Comprehensive Development Master Plan of Metropolitan Dade County, which was enacted by Dade County as Ordinance No. 75-22 on March 31, 1975. As an intregal part of said plan, the county commission provided in Section 6 of Ordinance No. 75-22 that —

> "Further, such implementation shall include and encourage the continuance of an affirmative action program for the construction and development of low and moderate income housing within Metropolitan Dade County, Florida."

10. On these facts the board of county commissioners of Dade County adopted Zoning Resolution No. Z-222-75 as follows —

WHEREAS, a public hearing of the Board of County Commissioners, Dade County, Florida, was advertised and held, as required by law, and all interested parties concerned in the matter were heard, and at which time, the applicant preferred [sic] recordable restrictions to the effect that the subject property would be developed substantially in compliance with the plans submitted for the hearing, and that the subject property would be used only for housing for senior citizens, and

WHEREAS, upon due and proper consideration having been given to the matter, it is the opinion of this Board that the requested district boundary change to RU-4L would be compatible with the neighborhood and area concerned and would not be in conflict with the principles and intent of the plan for the development of Dade County, Florida; and that the requested unusual use and variances would be compatible with the area and its development and would be in harmony with the general purpose and intent of the regulations and would conform with the requirements and intent of the Zoning Procedure Ordinance;

NOW THEREFORE BE IT RESOLVED by the Board of County Commissioners, Dade County, Florida, that the requested district boundary change, the unusual use to permit an entrance feature, the variance to permit 206 parking spaces where 288 are required and the variance to

permit an accessory use to be placed in front of the principal building be and the same are hereby approved. The Board of County Commissioners believes it to be in the best interests of the health, safety and welfare of the community to foster the private development of housing for the elderly. Pursuant to Ordinance No. 74-100, adopted December 4, 1974, the Dade County Board of County Commissioners enacted and adopted the Metropolitan Development Policies as outlined in Part 1 of the Comprehensive Development Plan. The Board of County Commissioners especifically [sic] found in Part 1 of the Master Plan that it would be in the best interests of the County to expand the efforts to assist Dade County's disadvantaged persons, including the *elderly* and the handicapped, to allow their fuller participation in all phases of the economy, including, but not limited to, *housing*, employment, medical services, transportation and financial aid. The Board of County Commissioners is further impressed by the applicant's proffer of a covenant to run with the land. The approval is subject to the following conditions:

1. That a plot use plan be submitted to and meet with the approval of the Zoning Director; said plan to include among other things, but be not limited thereto, type, height and location of structures, density of occupancy for proposed apartment, off-street parking areas, type and location of signs, landscaping, drainage, ingress and egress drives, etc.

2. That in the approval of said plan the same shall be in substantial compliance with the plans submitted for the hearing, prepared by Seymour Drexler, entitled "Marks Brothers Park Apartments," and dated revised 4-7-75.

3. That the development shall be established and maintained in accordance with the approved plan.

4. That said property shall be used solely for the purpose of providing housing for senior citizens and no building or buildings shall be erected, altered, placed or permitted to remain on any portion of said premises which are designed or used for other than residential purposes for senior citizens, as proferred [sic] by the applicant in his agreement.

5. That all buildings erected, placed or altered on any portion of the approved described property shall be operated at all times for housing senior citizens only, on a non-profit basis, as proferred [sic] by the applicant.

BE IT FURTHER RESOLVED by the Board of County Commissioners, Dade County, Florida, that pursuant to Section 33-6 of the Code of Metropolitan Dade County, Florida, the County hereby accepts the proferred [sic] agreement and does exercise its option to enforce the proferred [sic] restrictions, wherein the same are more restrictive than applicable zoning regulations.

The Zoning Director is hereby directed to make the necessary changes and notations upon the maps and records of the Dade County Building and Zoning Department, and to issue all permits in accordance with the terms and conditions of this Resolution.

PASSED AND ADOPTED this 23rd day of July, 1975.

From the above-stated findings of fact, the court draws the following —

### Conclusions of law

The basic instrument for land use planning and development in Dade County is the "Comprehensive Development Master Plan" enacted by Dade County Ordinance No. 75-22 (March 31, 1975). See *Fasano v. Board of County Commissioners of Washington County*, 264 Or. 574, 507 P.2d 23 (1973). In a most exhaustive study of the implications of a master plan — Haar, "The Master Plan: An Impermanent Constitution," 20 Law and Contemp. Prob. 353 (1955)—the following germane quotation is extracted—

". . . If the plan is regarded not as the vestpocket tool of the planning commission, but as a broad statement to be adopted by the most representative municipal body — the local legislature — then the plan becomes a law through such adoption. A unique type of law, it should be noted, in that it purports to bind future legislatures when they enact implementary materials. So far as impact is concerned, the law purports to control the enactment of other laws (the so-called implementary legislation) solely. It thus has the cardinal characteristic of a constitution . . ." Haar, *supra*, at 375.

The adoption of a comprehensive development plan obligates the local legislative body to carefully plan for the future and to best effectuate the goals of the community within the principles and guidelines enunciated therein.

The record before this court contains a plethora of documentation to support the diligent and painstaking commitment of the Dade County Commission to plan for the future growth of this community. The court finds and determines that Dade County's comprehensive development master plan bears a substantial and direct relationship to the general welfare of the county and is a reasonable effort to plan for the future within the framework of the county's economic and social life and goals. See *County Com'rs. Queen Anne's County v. Miles*, 228 A.2d 450, (Md. 1967).

Included within the comprehensive development master plan are "neighborhood or area" plans which treat in detail specific portions of the county and serve as refinements to the plan when

adopted by the commission. The subject property being within such a neighborhood — the Sunset Drive Area Restudy — Dade County Ordinance No. 75-48 incorporated this restudy into the master plan and gave it legal status.

In *Chrobuck v. Snohomish County*, 480 P.2d 489 (Wash. 1971), the court discussed the legal status of comprehensive planning —

> ". . . we start with the premise that comprehensive planning and zoning proposes and imposes limitations upon the free and unhampered use of private . . . property, and when such regulations are once enacted, the indiscriminate amendment, modification or alteration thereof tends to disturb that degree of stability and continuity in the usage of land to which affected landowners are entitled to look in the orderly occupation, enjoyment, and development of their properties . . ."

The recommendations and conclusions contained within the comprehensive development master plan and, more specifically, the Sunset Drive Area Restudy, may not be indiscriminately ignored in the exercise of the zoning power. The enactment of the master plan ordinances (75-22, 75-48) represents an affirmative commitment by the board of county commissioners to the public to implement the community goals and policies whenever applicable. Therefore, the official recommendations and conclusions of the master plan and area restudy carry a presumption of correctness and they should be followed unless there are compelling reasons to depart therefrom.

In this case the master plan and area restudy recommend RU-1 (single family residential) zoning. The county commission approved higher density for the subject property because it was represented that the apartments would be restricted to low-income, senior citizens and be operated on a nonprofit basis. While the provision of such housing is a legitimate community interest — and recognized as such by the master plan — it does not support the rezoning in this case. The provisions in the Declaration of Restrictive Covenants filed by respondent Marks are too vague to accomplish the purposes sought to be realized by the county commission when it approved the project. The covenants do not define "low income," nor is there any requirement that occupants fit that category. Similarly, there is no age limitation or requirement or definition of the term "elderly" or "senior citizen." Therefore, the restrictive covenants which were the basis for a departure from the master plan recommendations are legally insufficient to provide justification for the rezoning. Without the covenants, the Marks application for rezoning is identical with the previous application for the

same zoning classification which was rejected by the county commission and the courts. *Marks v. Dade County,* supra. The doctrine of res judicata, applicable in zoning matters, is applicable to this case.

The court is of the further opinion that the rezoning of the subject property to RU-4L (multiple family residential — 23 units per acre) constitutes an illegal spot zoning in this area. To permit such spot zoning is to invite immediate application by adjacent property owners for identical zoning classification (i.e., RU-4L) without restrictive covenants and denial would be unwarranted.

The court finds that the two remaining arguments raised by the petitioners — contract zoning and nonuse variances — are without merit.

On the issue of contract zoning the court specifically finds that the Dade County Commission did not enter into any contract for the rezoning of the subject property. The general law in the United States is that where a zoning authority does not make an agreement to zone but is motivated to do so by agreements made beween others or by voluntary restrictions running with the land, the ordinance or resolution is valid and is not considered conditional or contract zoning. *State ex rel. Zupancic v. Schimenz,* 174 N.W.2d 553 (Wis. 1970). See also 1 R. Anderson, *American Law of Zoning,* Section 821. The mere fact that the Dade County Commission may have been influenced by the representations made by respondent Marks does not void the action as contract zoning. This view was expressed in *Walberg v. Metropolitan Dade County,* Fla. App. 1974, 296 So.2d 509, where the Third District Court of Appeal, addressing a representation made by a developer, stated the following rule of law applicable to the present case —

> ". . . In the present instance, the most that could be said for appellants' position is that the commissioners may have been influenced by the representations made by South Cutler. A rule which would forbid owners from announcing concessions to the public interest in any proceeding before a zoning authority would not be in the best interest of the public . . ." 296 So.2d 509, 511.

Finally, nonuse variances need not be supported by nonself-created hardship (the standard required to support the granting of use variances). In *Troup v. Bird,* Fla. 1951, 53 So.2d 717, the Florida Supreme Court ruled that such variances may be upheld if consistent and harmonious with the spirit and general purpose of the zoning classification.

For all the foreging reasons it is accordingly ordered and adjudged that —

(1) The petition for a writ of certiorari be and the same is hereby granted.

(2) A writ of certiorari be and the same is hereby entered.

(3) Dade County Zoning Resolution No. Z-222-75 be and the same is hereby declared illegal and void.

(4) The court retains jurisdiction to carry out the provisions of this final order.

(5) Each party shall bear its own costs.