### CASTELLANO v. DADE COUNTY, et al.
No. 76-21377.
Circuit Court, Dade County.
September 7, 1976.

Sherwin Gross, Miami, for the plaintiff.

Stuart L. Simon, County Attorney, Robert A. Ginsburg, Assistant County Attorney, for the defendants.

JACK M. TURNER, Circuit Judge.

This cause came on to be heard upon defendant Dade County's motion to dismiss and/or for summary judgment. The complaint alleges *inter alia* that the plaintiff is the owner of certain unde-, veloped real property in Dade County, the value of which was alleged to be greatly diminished by the adoption of the Dade County Comprehensive Development Master Plan (CDMP). The subject property lies within the "Environmental Sensitivity Zone"

as defined by the CDMP.[1] Plaintiff further alleges that he would have sought rezoning in order to place a high density residential development on the property if such development had not been precluded by the CDMP. On the basis of the foregoing allegations, plaintiff demands compensation as a result of the alleged inverse condemnation of the subject property.

1. ENVIRONMENTAL SENSITIVITY

The Environmental Sensitivity Zone is the area most susceptible to environmental degradation of the zones delineated in the study. Although much of the zone is managed due to the extensive water control devices, the geologic and biologic nature of the zone approximates natural conditions. Uses permitted within this zone must be carefully restricted and made compatible with the area and its environment and should in no way adversely affect the viability of the functioning ecosystems . . .

No development is permitted which would remove or displace organic soils, native vegetation, or endangered species of wildlife. Restricted development includes, but is not limited to:

Rock pits or borrow pits

Paved surfaces or roadbeds

All structures

Passive recreation facilities and public facilities essential to public health, safety and welfare, approved under the Environmental Impact Ordinance, are regulated as follows:

Where facilities for sanitary waste are necessary, self-contained facilities may be utilized.

Transportation facilities which would retain, divert or otherwise block surface water flow of a 50 year storm must provide for the reestablishment of sheet flow through the use of interceptor spreader systems or performance equivalent structures and shall provide for passage of stream, strand or slough waters through the use of bridges, culverts, piling construction or performance equivalent structures or systems. Channelization of such areas shall be the minimum length necessary to maintain reasonable flow and prevent weed blockage.

Placement of structures must be accomplished in a manner that will not adversely affect surface water flow or tidal action.

No activities which alter the depth, duration, or seasonality of inundation are permitted.

No tracked vehicles except for fire fighting purposes are permitted off roadways. (CDMP, at pages 69, 90)

The CDMP divides the Environmental Sensitivity Zone into four distinct categories each with its separate characteristics and restrictions. Plaintiff does not allege in which specific category the subject property lies.

Comprehensive planning is properly recognized as an essential responsibility of Dade County's metropolitan government,[2] and land use planning is now required of all governmental entities in Florida by statute.[3] The principal purpose of the Dade County CDMP is to direct and accomplish coordinated and harmonious development in a manner which will permit the provision of adequate community services while protecting the ecological balance of the environment, in order to promote the public health, safety, convenience, prosperity and general welfare of Dade County's citizens and visitors.[4] To accomplish this purpose and provide the community with a long range pattern of rational development, the plan must be based upon accurate environmental and ecological facts, particularly as such factors are affected by changes in the natural charcteristics of the land incident to its development. Planners thus require an atmosphere where they can plan, discuss and comment upon these matters without fear that their discussion per se will trigger a "taking" for which compensation must be paid for all property studied or commented upon.

The enactment of a comprehensive development master plan, which by its nature guides future acts of legislative bodies and future quasi-judicial proceedings, cannot be the basis for an action in inverse condemnation. *Selby Realty Co.* v. *City of San Buenaventura,* 109 Cal. Rptr. 799 (1973). The adoption of the CDMP is an exercise of the police power incident to regulating the uses of private property. As such, it is not and cannot be a "taking" for which just compensation must be paid under the federal or Florida constitutions.[5] For example, in *Fred F. French Inv. Co., Inc.* v. *City of New York,* Ct. of App. 1976, 39 N.Y.2d 587, 385 N.Y.S.2d 5, the highest appellate court in New York distinguished between police power regulation and "taking" for inverse condemnation —

> . . . when the state "takes" that is appropriates, private property for public use, just compensation must be paid. In contrast, when there is only regulation of the uses of private property, no compen-

2. Article I, Section 1.01.A.5, Home Rule Charter.

3. Local Government Comprehensive Planning Act of 1975, Sections 163.3161 *et seq.,* Florida Statutes 1975.

4. CDMP at page i; Sections 2-113 and 2-114, Dade County Code.

5. It is well-established that even zoning actions, which have a more immediate impact upon real property and a direct effect on its value, do not constitute takings for inverse condemnation purposes. *Mailman Development Corp.* v. *City of Hollywood,* Fla. App.1974, 286 So.2d 614, *cert.den.,* 293 So.2d 884, *cert.den.,* 419 U.S. 844; *HFH, Ltd.* v. *Superior Court of Los Angeles, County,* Cal.S.Ct.1975, 125 Cal.-Rptr. 365.

sation need be paid . . . In all but exceptional cases, nevertheless, such a regulation does not constiute a "taking," and is therefore not compensable . . .

* * * * *

Absent factors of governmental displacement of private ownership, occupation or management, there was no "taking" within the meaning of constitutional limitations. 385 N.Y.S.2d 5, 8.

The county commission's adoption of the CDMP does not in itself constitute a rezoning of real property. An owner of property in a given zoning classification has the same property rights in the land subsequent to the adoption of the CDMP as he had prior to its adoption. The adoption of the CDMP does not by itself change the rights of a property owner to convey or otherwise develop or use his property in accordance with existing zoning law, subdivision regulations and building permit regulations. The CDMP's descriptions, guidelines and recommendations must be implemented by future ordinances and zoning resolutions before they will have a direct and actual impact on individual parcels of real property.

Nevertheless, the legal framework within which such property rights are held is affected by the adoption of the CDMP. Both the Dade County Code and the courts reflect the impact of master planning on the zoning process.[6] The adoption of the CDMP has an effect on property owners who, like the plaintiff, wish some type of zoning action incident to development. This effect is best expressed by examining the burden of proof imposed on one who seeks governmental action contrary to CDMP recommendations. A party proposing a change (or wishing to retain a status quo) that departs from the plan carries some burden of showing that the plan recommendation is unreasonable or inapplicable to the specific parcel or proposed use.

In *Dade County Association of Unincorporated Areas, Inc.* v. *Board of County Commissioners of Metropolitan Dade County,* supra, this court had occasion to rule upon the legal implications of the enactment of the CDMP —

The adoption of a comprehensive development plan obligates the local legislative body to carefully plan for the future and to best effectuate the goals of the community within the principles and guidelines enunciated therein.

6. Section 2-114, Dade County Code; *Dade County Association of Unincorporated Areas, Inc.* v. *Board of County Commissioners of Metropolitan Dade County,* Circuit Court Case No. 75-26308, dated December 3, 1975. [45 Fla. Supp. 193]

The recommendations and conclusions contained in the Comprehensive Development Master Plan . . . may not be indiscriminately ignored in the exercise of the zoning power. The enactment of the Master Plan ordinances . . . represents an affirmative commitment by the board of county commissioners to the public to implement the community goals and policies whenever applicable. Therefore, the official recommendations and conclusions of the Master Plan and the Area Restudy carry a presumption of correctness and they should be followed unless there are compelling reasons to depart therefrom.

If plaintiff believes that the CDMP improperly places his property within the "Environmental Sensitivity Zone" or feels that the requirements are unduly restrictive, he has the option of filing an application to amend the CDMP. Section 2.116.1, Dade County Code. Even without such an amendment, plaintiff has the right to seek a zoning change (and the attendant right of acess to the courts). But absent some future application by plaintiff to have his property rezoned, this action is premature. By failing to exhaust his administrative and quasi-judicial remedies the plaintiff is precluded at this time from instituting this cause of action against the defendant, Dade County.

It is accordingly ordered and adjudged that —

(1) Dade County's motion for summary judgment is denied.

(2) Dade County's motion to dismiss Count II of the plaintiff's complaint is granted as to defendant Dade County, with leave, however, to the plaintiff to file an amended complaint within thirty days from the date of entry of this order.