## NOIROT v. DADE COUNTY.

No. 76-36846.

Circuit Court, Dade County.

March 15, 1979.

Donald S. Rose, Miami, for the petitioner.

Stuart L. Simon, County Attorney, and Stanley B. Price, Assistant County Attorney, for the respondent.

DAN SATIN, Circuit Judge.

This cause came on to be heard pursuant to the timely filing of a petition for writ of certiorari directed to the Dade County Board of County Commissioners as the authorized zoning authority for Dade County, Florida. Following the submission of legal briefs and oral argument of respective legal counsel, this court enters its final judgment.

Pursuant to the adoption of Ordinance No. 76-49[1] the Dade County Board of County Commissioners, upon application of the directors of the Dade County Building and Zoning Department and Dade County Planning Department, instituted zoning proceedings to conform to the ideals and objectives of the Ojus-Northeast Dade Area Study. The study is an eighty page document which contains a detailed analysis for the future land use pattern of the subject area. The subject property is located between N. E. 26 Avenue and West Dixie Highway between N. E. 195 Street and theoretical N. E. 201 Street, and is approximately 30 acres in size. The subject property was rezoned from RU-3B (Bungalow court)[2] to RU-3M (Minimum Apartment House, 12.9 units per acre). The grandfathered provisions of the RU-3B category permitted all uses in RU-1, RU-2 and RU-3 districts with permitted densities of less than 12.9 units per acre. At the public hearing, the board of county commissioners had before it the written recommendations of both the directors of the Building and Zoning Department and Planning Department. In their recommendations, both departments specifi-

---

[1] A copy of said ordinance is contained on page 2 of the Ojus-Northeast Dade Area Study which is part of the formal record in this cause. Said ordinance is promulgated as Section 2-116.10 of the Code of Metropolitan Dade County and is a refinement to the Dade County Comprehensive Development Master Plan.

[2] Pursuant to Section 33-207.1 of the Code of Metropolitan Dade County, adopted in 1961, the RU-3B district was officially repealed and specifically found by the county commission to be a danger to the public health, morals, safety and welfare of Dade County.

cally provided that the petitioner's property be permitted to continue as a bungalow court and that the proposed rezoning would not affect any present usage of the property. The official zoning map of the subject property indicates that due east of the subject tract is an RU-1 residential community. To the south of the property is an industrial plant and an RU-3M residential community. The northern border of the subject property was rezoned to RU-3M at the same meeting by the board of county commissioners. The petitioner has continuously utilized the subject tract as a trailer park from a period prior to 1961 to the present time. The record further reflects that the petitioner has never sought rezoning of his property. At the conclusion of the public hearing, the board of county commissioners adopted Zoning Resolution No. Z-289-76 wherein the commission specifically provided the following —

> *"Be it further resolved* by the Board of County Commissioners, Dade County, Florida, that it is not the intent of the Board of County Commissioners in rezoning of the subject property, to void any resolutions or conditions contained therein as they now affect the subject property."

This petition timely ensued.

Following this court's assiduous review of the formal record in this cause, this court determines as a matter of law that the enactment of Zoning Resolution No. Z-289-76 was fairly debatable and constituted a proper utilization of Dade County's police power. This court must give great credence to the Ojus-Northeast Dade Area Study and the county's professional staff recommendations which indicated that the subject tract should be rezoned from its archaic zoning classification of RU-3B to a more liberal classification of RU-3M. As recently noted by the District Court of Appeal, Third District, in the cause styled Dade County v. Inversiones Rafamar, S.A., 360 So.2d 1130 (Fla. 3d DCA 1978) —

> ". . . It is a well-established zoning rule that there must be a dividing line drawn, sometimes arbitrarily. When that line must be drawn, it is to be drawn by the zoning authority and in the absence of showing that the location of the line is one which deprives the owner of the beneficial use of his property, it should not be changed by the judiciary. Cf. City of Miami Beach v. Lachman, 71 So.2d 148 (Fla. 1953); and City of Tampa v. Consolidated Box Company, 110 So.2d 446 (Fla. 2d DCA 1959)." (360 So.2d at 1133.)

This court must further reject the argument advanced by petitioner that the RU-3M classification precludes all reasonable uses of the property. The formal record in this cause does not support

this contention. There was no demonstration in the record that the RU-3M classification is confiscatory. In applying the fairly debatable rule the Florida courts have held that a zoning resolution is not invalid merely because it prevents the owner from using the property in a manner which is economically most advantageous. S. A. Healy Company v. Town of Highland Beach, 355 So.2d 813 (Fla. 4th DCA 1978). As noted by respondent at oral argument, had the county commission not taken action based upon the Ojus-Northeast Dade Area Study, the petitioner would still have a zoning classification which would be deemed a nonconforming use. If the petitioner believes the RU-3M classification is not suited to its property, it may timely apply to Dade County to alter its zoning classification. Petitioner's present burden is no greater than if the county commission had not rezoned its property to the RU-3M classification.

It is further important to note that the actions of the county commission were accomplished pursuant to the Ojus-Norheast Dade Area Study. Said study was the result of long and arduous public hearings affecting the citizens of the study area. Neighborhood studies are authorized pursuant to Section 2-116.2 of the Code of Metropolitan Dade County which provides for the following objectives —

"(a) Identification of a comprehensive system for planning on an area or neighborhood basis;

(b) Meaningful citizen participation in the area at a time convenient to the residents prior to and during the study and planning process;

(c) Preparation and periodic revision of plans for these areas; and

(d) Implementation of plans adopted for these areas."

Two recent circuit court opinions of the eleventh judicial circuit of Florida have analyzed the nature and ramifications of the Dade County Comprehensive Development Master Plan. In Dade County Association of Unincorporated Areas, Inc. v. Board of County Commissioners of Metropolitan Dade County, 45 Fla. Supp. 193 (11th Cir. 1975), the court was requested to overrule a decision of the county commission which granted zoning in violation of the land use provisions of the Comprehensive Development Master Plan. In striking down the county commission action, the court pronounced the rule of law applicable to this cause —

"The adoption of a comprehensive development plan obligates the local legislative body to carefully plan for the future and to best effectuate the goals of the community within the principles and guidelines enunciated therein.

*     *     *

"The recommendations and conclusions contained in the Comprehensive Development Master Plan . . . may not be indiscriminately ignored in the exercise of the zoning power. The enactment of the Master Plan ordinances . . . represents an affirmative commitment by the board of county commissioners to the public to implement the community goals and policies whenever applicable. *Therefore, the official recommendations and conclusions of the Master Plan and the Area Restudy carry a presumption of correctness and they should be followed unless there are compelling reasons to depart therefrom.*" (emphasis added)

And in Castellano v. Crouse, 45 Fla. Supp. 106 (11th Cir. 1976), the court examined the burden imposed upon those who seek to alter the provisions of the Comprehensive Development Master Plan —

"Nevertheless, the legal framework within which such property rights are held is affected by the adoption of the CDMP. Both the Dade County Code and the courts reflect the impact of master planning on the zoning process. The adoption of the CDMP has an effect on the property owners who, like the plaintiff, wish some type of zoning action incident to development. This effect is best expressed by examining the burden of proof imposed on one who seeks governmental action contrary to CDMP recommendations. A party proposing a change (or wishing to retain a status quo) *that departs from the plan carries some burden of showing that the plan recommendation is unreasonable or inapplicable to the specific parcel or proposed use.*" (emphasis added)

Even more recently, the Third District Court of Appeal in Dade County v. Yumbo, S.A., 348 So.2d 392 (Fla. 3d DCA 1977), upheld the authority of Dade County to institute its Master Plan directing development in logical patterns. The court recognized the need for master planning and determined that the trial court was in error in permitting development contrary to the plan.

Based upon the aforementioned applicable law, it is hereby ordered and adjudged that —

1. The petition for writ of certiorari is hereby denied.

2. The enactment of Dade County Zoning Resolution No. Z-289-76 constitutes a proper exercise of Dade County's police power and is hereby declared to be lawful and valid.

3. Each party shall bear its own costs in this proceeding.